

1  ELOY MASCORRO

2  299 17th St

3  San Diego, CA 92101

4  Phone: (213) 551-9951

5  Email: emascorro8118@mail.com

6  Plaintiff, In Pro Se

7

8

9

10

11

12                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF CALIFORNIA
13

14

15

16  ELOY MASCORRO,                    Case number: '25CV2172 JLS  KSC

17

18  Plaintiff,                        **COMPLAINT**

19

20  v.

21

22  THE CITY OF NATIONAL CITY;
    OLEGARIO GARCIA; KAITLYNN NORIE;
23  SADIQ AL-MOSAWI; REYNALDO
    VELAZQUEZ; MARC VARGAS; ROWDY
24  PAUU;  JONH DOES 1-2; JANE DOES 1-2,

25

26  Defendants.

27

28
                              1

**FILED**

Aug 22 2025

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ armincortez          DEPUTY

I. PARTIES

1.  Plaintiff ELOY MASCORRO is, and at all times relevant to this Complaint was, a resident of the City of National City, County of San Diego, State of California. Defendant THE CITY OF NATIONAL CITY is a municipal corporation organized under the laws of the State of California. The City is the public employer of all individually named Defendants who are City employees and is responsible for their policies, customs, training, and supervision.

2.  Defendants KAITLYNN NORIE, SADIQ AL-MOSAWI, REYNALDO VELAZQUEZ, MARC VARGAS, and ROWDY PAUU are, and at all times relevant to this Complaint were, police officers employed by the City of National City. These Defendants are sued in their individual capacities for their actions that caused the deprivation of Plaintiff's constitutional rights. Although the true names of most of the officers are known, matching the name to the exact officer in each cause of action is not known with certainty and more information about each officers actions will need to be sought during discovery.

3.  Defendant OLEGARIO GARCIA is, and at all times relevant to this Complaint was, a maintenance worker employed by the City of National City. This Defendant is sued in his individual capacity for his own actions.

4.  Defendants JOHN DOE 1 through 2 and JANE DOE 1 through 2 and whose true names and capacities are currently unknown to Plaintiff. Plaintiff is informed and believes, and on that basis alleges, that these Defendants were involved in the incidents described herein and are responsible for the injuries and damages sustained by Plaintiff.

5.  Plaintiff is informed and believes that an unidentified plainclothes female officer who was at the scene is sued herein as JANE DOE 1.

6.  Plaintiff is informed and believes that an unidentified plainclothes City maintenance Supervisor who was at the scene is sued herein as JOHN DOE 1.

7.  Plaintiff is informed and believes that an unidentified EMT/Paramedic who accused Plaintiff of faking his injuries is sued herein as JANE DOE 2.

8.  Plaintiff is informed and believes that an unidentified Internal Affairs Detective who told Plaintiff the officers had followed their training is sued herein as JOHN DOE 2.

9.  Plaintiff is informed and believes that an unidentified Internal Affairs detective who conducted the initial investigation into Plaintiff's complaint is sued herein as (JOHN DOE 2) Other individuals who participated in the misconduct and conspiracy to violate Plaintiff's rights, and whose identities will be revealed through discovery, are sued as JOHN and JANE DOES 1 through 3.

II. JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, specifically 42 U.S.C. § 1983, for violations of his Fourth and First Amendment rights.

11. This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367, as these claims arise from the same common nucleus of operative facts as the federal claims.

3

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of California.

III. COMPLIANCE WITH CALIFORNIA TORT CLAIMS ACT

13. On or about July 25, 2024, Plaintiff Eloy Mascorro suffered injuries as a result of the Defendants' conduct. On or about November 15, 2024, Plaintiff presented a written claim for damages to the City of National City, which was received within the six-month statutory period required by California Government Code section 911.2. On or about February 24, 2025, the City of National City denied Plaintiff's claim. This Complaint is being filed within six months of the date the claim was denied, as required by California Government Code section 945.6.

IV. GENERAL ALLEGATIONS

14. On or about July 25, 2024, at approximately 8:00 a.m., Plaintiff Eloy Mascorro Was present at Morgan Square Fountain Park, a public area in National City, California At that time, he was repairing a flat tire on his bicycle while a cell phone mounted on the bike actively recorded the incident.

15. Defendant Olegario Garcia, an employee of the City of National City operating a City vehicle, approached Plaintiff and accused him of littering. Plaintiff informed Garcia that the debris causing the issue likely resulted from a nearby maintenance worker using a leaf blower. After confronting the maintenance worker, Defendant Garcia returned to Plaintiff displaying a hostile demeanor, yelling, "He said it was not his, don't

4

be littering, blood." Plaintiff, fearing for his safety and experiencing anxiety, yelled, "Get away from me!" To protect himself, Plaintiff retrieved his legally possessed pepper spray. At no time did Plaintiff brandish a knife.

16. After this confrontation, Defendant Garcia walked away, yelling, "You ain't shit without your shit," while staring at Plaintiff as he documented the incident by taking pictures of the City vehicle.

17. Plaintiff noted a phone number on the City vehicle operated by Defendant Garcia and called to report his behavior. Due to background noise, Plaintiff had difficulty communicating with a female representative who answered the call. He requested to speak with a supervisor to file an official complaint against Defendant Garcia. A supervisor returned Plaintiff's call shortly thereafter, and he described the confrontation, emphasizing that he had retrieved his pepper spray in self-defense due to Garcia's aggressive approach.

18. At approximately 8:16 a.m., Plaintiff utilized his phone to record the area where the maintenance worker was located, aiming to capture evidence in anticipation of further retaliatory actions from Defendant Garcia.

19. About five minutes later, after completing his bicycle repair, Plaintiff began photographing the area and the surveillance cameras situated on the Chamber of Commerce Building to gather additional evidence for his complaint against Defendant Garcia.

20. At around 8:20 a.m., police officers from the City of National City, including Defendants Kaitlynn Norie, Sadiq Al-Mosawi, Reynaldo Velazquez, Marc Vargas, and Rowdy Pauu, arrived at the scene in full uniform. From a distance of 30-40 feet, each

officer drew their firearms and pointed them at Plaintiff while Defendant Norie
commanded him to get of his bike and approach them walking backward. Plaintiff
complied, raising his hands and informing them that he only possessed a phone and a
pocket knife.

21. As Plaintiff complied and began to walk backward, he lay down on the ground on
his stomach per the officers' instructions. Despite being compliant and reiterating that
they received a false report, the officers continued to point their firearms until they
handcuffed him, applying force to his arms and causing severe pain to his shoulder.
One officer disabled Plaintiff's recording device while another stated that the encounter
was being recorded.

22. Plaintiff informed the officers several times that he had a recording of the incident
With Defendant Garcia and that the surveillance footage from the Chamber of
Commerce would corroborate his account. The officers claimed that Defendant Garcia
had reported Plaintiff brandishing a knife, which Plaintiff denied, reiterating he had only
retrieved the pepper spray. The officers ignored Plaintiff's requests to review the
recording and investigate exculpatory evidence, despite adequate time to conduct a
thorough investigation before making an arrest.

23. Plaintiff observed a female officer, identified as Jane Doe 1, in plain clothes but
armed, conversing with the Defendant officers while positioned behind their police
vehicle. Plaintiff again yelled from the police vehicle that he possessed evidence and
that the Chamber of Commerce Building has surveillance cameras.

24. Additionally, Plaintiff noticed a male individual, identified as John Doe 1, who
appeared to work for the City of National City's Maintenance Services, speaking
with the officers while Plaintiff was in the back seat of the police vehicle and again yelled

6

out that he had evidence that Defendant Olegario Garcia was lying.

25. After his arrest, Plaintiff requested medical attention for his shoulder pain; however, the officers neglected his requests for approximately 45 minutes. They subsequently transported him to the National City Police Headquarters.

26. At the Police Headquarters, Plaintiff again communicated his situation to Defendants Velazquez, Vargas, and Pauu regarding his cellphone evidence, who again, informed him that he was under arrest.

27. Approximately 45 minutes after multiple requests for medical assistance, Plaintiff finally received medical attention. Jane Doe 2, a medical assistant, examined Plaintiff and noted his shoulder pain. Jane Doe 2 accused Plaintiff of faking his injury, making a derogatory statement about homeless individuals. This interaction contributed to the emotional and physical distress Plaintiff endured as a result of the arrest. Approximately 72 hours later, after being booked at the San Diego Downtown Jail, Plaintiff was released without any charges filed against him.

28. The official call for service record from the City of National City concerning the July 25, 2024 incident is included as Exhibit A. This record categorizes the event as type 417(Brandishing Weapon), stating only that a "SUBJ PULLED A KNIFE" with no mention of threats or intent to cause fear.

29. Conspiracy to Violate Rights: Plaintiff restates that all Defendants conspired Violate Plaintiffs rights by continuing the false arrest, refusal to properly and unbias investigation, the intentional withholding of medical care and denials of Plaintiffs claims of physical injury by Jane Doe EMT and multiple medical staff at the Hospital, continuing to state "you know youre going to jail after this", or "these injuries are not going to keep

you from going to jail", when Plaintiff was finally transported to, before being booked in jail.

Count I: Malicious Prosecution Against Defendant Garcia

30. Plaintiff incorporates by reference all previously stated allegations as if fully set forth herein.

31. Defendant OLEGARIO GARCIA initiated a criminal proceeding against Plaintiff by intentionally and falsely reporting to law enforcement that Plaintiff had brandished a knife, which constitutes the institution of criminal proceedings as required by Kelley v. Board of Trustees.

32. The criminal proceeding against Plaintiff was terminated in his favor when he was released from jail after approximately 72 hours, and no criminal charges were filed against him, fulfilling the requirement established in Burgess v. Superior Court.

33. Defendant Garcia's false report lacked probable cause, as no reasonable person would conclude that Plaintiff had committed a crime based on the facts known at the time. The actions by Garcia were in violation of the standards outlined in Gordon v. City of Oakland, which underscore the necessity of probable cause for lawful prosecution.

34. Garcia acted with malice when he made the false report, motivated by an improperpurpose stemming from Plaintiff's phone call to Garcia's supervisor to complain about his aggressive behavior. This retaliatory motive is demonstrated by the fact that Defendant Garcia was within earshot of Plaintiff's phone call and immediately followed

up with the false report, consistent with the principles established in Keenan v. Hall.

35. As a direct and proximate result of Defendant Garcia's malicious prosecution, Plaintiff suffered damages, including but not limited to loss of liberty, emotional distress, physical pain, and loss of property, as articulated in Ricketts v. City of Hartford.

36. Plaintiff is entitled to a monetary award for these compensatory damages and punitive damages to be determined at trial.

Count II: 42 U.S.C. § 1983 – False Arrest and Unreasonable Seizure (Fourth Amendment)

37. Plaintiff incorporates by reference all previously stated allegations as if fully set forth herein.

38. Defendants Kaitlynn Norie, Sadiq Al-Mosawi, Reynaldo Velazquez, Marc Vargas, Rowdy Pauu, and Olegario Garcia, acting under color of law, violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure by arresting and detaining him without probable cause. A reasonable and prudent officer would have known that probable cause was absent under the circumstances, as established in Graham v. Connor.

39. The Defendant Officers were on notice that they had received a potentially false Report  from Olegario Garcia, which was motivated by a clear retaliatory purpose. Despite this knowledge, they acted with deliberate indifference by willfully refusing to investigate readily available exculpatory evidence, as articulated in Sanchez v. City of Los Angeles.

9

40. Specifically, Plaintiff immediately offered to show the officers a contemporaneous cellphone recording that captured the audio of the incident, which would have revealed Defendant Garcia's aggressive and hostile behavior, consistent with the standards set forth in Lytle v. Carl regarding the consideration of exculpatory evidence.

41. This evidence was sufficient to raise significant doubt about Defendant Garcia's version of events and diminish any probable cause for Penal Code § 417 PC, as highlighted in Dunaway v. New York.

42. By ignoring this and other available evidence—including the existence of third-party surveillance footage and Plaintiff's phone call history to the City to file a complaint against Olegario Garcia—the officers demonstrated a reckless disregard for the truth, violating the standard established in Brower v. Inyo County.

43. Based on the totality of the circumstances, including the officers' failure to reasonably investigate and the absence of probable cause, they unlawfully arrested Plaintiff. As a direct and proximate result of this unlawful seizure, Plaintiff suffered damages, including loss of liberty and severe emotional distress.

COUNT III: 42 U.S.C. § 1983 – Unreasonable Force (Fourth Amendment)

44. Plaintiff re-alleges and incorporates by reference paragraphs 1-28 as if fully set forth herein.

45. At all times relevant to this claim, Defendants Kaitlynn Norie, Sadiq Al-Mosawi,

1  Reynaldo Velazquez, Marc Vargas, and Rowdy Pauu were acting under color of law.

2

3  46. Defendants used objectively unreasonable and excessive force against Plaintiff.

4  Specifically, the officers drew their firearms and pointed them at Plaintiff from a distance

5  of 30-40 feet, despite him being compliant, having his hands raised, and displaying no

6  weapon. Plaintiff verbally informed the officers that he only possessed a cell phone and

7  a pocketknife, which is significant under the standard established in Graham v. Connor.

8

9  47. Despite Plaintiff's compliance and clear lack of a threat, Defendants continued to

10  point their firearms at him while ordering him to walk backward toward them. Plaintiff

11  complied with these orders while experiencing intense fear for his life and safety,

12  believing he could be shot at any moment, which aligns with the principles articulated in

13  Cunningham v. City of Los Angeles regarding the reasonableness of force used against

14  a compliant individual.

15

16  48. Defendants further ordered Plaintiff to lie down on his stomach. While Plaintiff was

17  lying prone and still posing no threat, Defendants approached him with their firearms

18  drawn. Defendants then handcuffed Plaintiff while he was lying prone, forcefully and

19  unnecessarily yanking his arms behind his back. This action caused severe pain in

20  Plaintiff's shoulder, resulting in a rotator cuff injury, as highlighted in Mattos v. Agarano,

21  where the use of force must be proportional to the threat posed.

22

23  49. The level of force used by Defendants was objectively unreasonable under the

24  circumstances. Plaintiff was compliant, posed no immediate threat to the officers or

25  others, and made no attempt to resist arrest. A reasonable officer would have

26  recognized that pointing firearms at a compliant individual, maintaining that posture

27  while ordering him to move, and then forcefully handcuffing him was excessive and

28  unnecessary, as emphasized in Robinson v. Solano County.

50. As a direct and proximate result of Defendants' unreasonable and excessive use of force, Plaintiff suffered a rotator cuff injury, physical pain, emotional distress, and fear.

COUNT IV: False Imprisonment (State Law Claim)

51. Plaintiff incorporates by reference all previously stated allegations as if fully set forth herein.

52. Defendants intentionally, unlawfully, and without legal justification confined Plaintiff for  approximately 72 hours by arresting and detaining him without probable cause, as established in Burgess v. Superior Court, which underscores that false imprisonment occurs when a person is confined without legal authority.

53. Plaintiff was aware of his confinement and did not consent to it. The lack of consent is evidenced by Plaintiff's repeated assertions that he had not committed a crime and his compliance with the officers' commands, as noted in Woods v. L.A. County.

54. The confinement was unlawful because Defendants lacked probable cause to arrest Plaintiff, as discussed in Doe v. Taylor Independent School District. The actions of the officers, combined with their failure to investigate exculpatory evidence, demonstrate that the confinement was unjustified.

55. As a direct and proximate result of the false imprisonment, Plaintiff suffered a loss of liberty, emotional distress, and loss of property, as established in Kaiser v.

Hunsaker, which emphasizes the emotional impact of unlawful restraint.

COUNT V: Intentional Infliction of Emotional Distress (IIED)

56. Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

57. Defendants Olegario Garcia and Jane Doe 2 engaged in a course of conduct that, taken in its totality, was extreme, outrageous, and beyond all bounds of decency tolerated in a civilized community, as established in Mildner v. St. Joseph Medical Center.

58. Defendant Garcia, motivated by retaliation for Plaintiff's protected speech in reporting Garcia's misconduct, knowingly made a false report to law enforcement accusing Plaintiff of a felony. Garcia knew or should have known that this false report would lead to Plaintiff's arrest, detention, and the foreseeable emotional distress associated with being falsely accused of a crime. This malicious action was intended to punish Plaintiff for exercising his right to free speech and to report government misconduct, aligning with the standards articulated in KOVR v. City of Los Angeles.

59. Plaintiff was subjected to the further indignity and humiliation of having multiple firearms pointed at him by Defendant Officers, being forced to walk backward and lie prone on the ground, and having his arms painfully yanked behind his back while being handcuffed. These actions, stemming directly from Garcia's false report, exacerbated Plaintiff's emotional distress and created a sense of fear, anxiety, and powerlessness. Such conduct is consistent with the extreme and outrageous behavior described in Gordon v. City of Oakland.

60. While Plaintiff was in custody, injured, and experiencing emotional distress from The false arrest and excessive force, Defendant Jane Doe 2, a medical professional, acted with reckless disregard for Plaintiff's emotional well-being by accusing him of faking his injuries. Jane Doe 2's dismissive statement, comparing Plaintiff to "homeless people [who] lie about having a heart attack," demonstrated a callous indifference to his pain and suffering and further compounded his emotional distress, consistent with the principles outlined in Hughes v. Pair.

61. The combined actions of Garcia and Jane Doe 2, occurring in rapid succession and targeting Plaintiff in a vulnerable state, were intentionally or recklessly calculated to cause, and did in fact cause, Plaintiff severe emotional distress. This distress manifested in severe anxiety, humiliation, fear, mental anguish, emotional pain, a rapid heart rate, and feelings of powerlessness. Plaintiff's emotional distress was so severe that no reasonable person in Plaintiff's position could be expected to endure it, as noted in Kaiser v. Hunsaker.

62. As a result of the Defendants' outrageous conduct, Plaintiff suffered and continues to suffer severe emotional distress, for which he is entitled to compensatory and punitive damages.

COUNT VI: Negligent Infliction of Emotional Distress (NIED)

63. Plaintiff re-alleges and incorporates by reference paragraphs 1-45 as if fully set forth herein.

64. Defendants Kaitlynn Norie, Sadiq Al-Mosawi, Reynaldo Velazquez, Marc Vargas,

14

and Rowdy Pauu, as police officers employed by the City of National City, owed Plaintiff a duty of care to conduct a reasonable and prudent investigation before making an arrest, including a duty to consider readily available exculpatory evidence and to refrain from using excessive force, as established in Morris v. County of Marin.

65. Defendants breached their duty of care to Plaintiff by negligently failing to conduct a reasonable investigation. Despite Plaintiff's repeated offers to show them exculpatory evidence—specifically, the audio recording on his cell phone, which captured the events leading up to the arrival of the Defendant Officers, and his phone call history, which would have corroborated his account and demonstrated Garcia's retaliatory motive—Defendants willfully ignored this evidence. A reasonable and prudent officer, under similar circumstances, would have investigated these readily available sources of information before making an arrest, reinforcing the standard set in Miller v. State of California.

66. The officers' act of pointing their loaded firearms at Plaintiff while he was unarmed and compliant caused him to reasonably fear for his life, creating an immediate threat of emotional distress. This conduct was negligent and escalated the situation unnecessarily.

67. This fear directly and proximately caused the Plaintiff severe emotional distress, which is consistent with the principles outlined in Cantu v. Resolution Trust Corp.

68. Plaintiff experienced severe anxiety, panic attacks, paranoia of similar outrageous acts being committed by law enforcement, flashbacks of the incident, difficulty sleeping, and an inability to concentrate. This emotional distress was beyond what a reasonable person should be expected to endure under similar circumstances, as noted in Marilyn v. Parnell.

15

1

2    69. By negligently escalating the situation and using excessive force, the officers

3    created a dangerous environment that placed Plaintiff at risk of being shot or otherwise

4    physically harmed, causing him severe emotional distress.

5

6    70. As a direct and proximate result of Defendants' negligent failure to investigate and

7    their negligent use of excessive force, Plaintiff was falsely arrested and imprisoned for

8    approximately 72 hours. This negligence directly placed Plaintiff in a zone of danger,

9    causing him to fear immediate physical harm, including being shot.

10

11    71. Defendants' negligence was a substantial factor in causing Plaintiff severe

12    emotional distress. This distress includes, but is not limited to, fear, anxiety, humiliation,

13    sleeplessness, and the psychological trauma associated with the false arrest, excessive

14    force, and subsequent detention.

15

16    72. A reasonable and prudent officer would have investigated the readily available

17    exculpatory evidence before escalating the situation and using excessive force, as

18    emphasized in Hoffman v. Board of Education.

19

20    73. Plaintiff had already been suffering from severe anxiety and panic attacks since

21    childhood, and the conduct of the Defendants added more trauma that prevented

22    Plaintiff from seeking ongoing treatment.

23

24    74. The emotional distress suffered by Plaintiff as a result of Defendants' negligence

25    is severe and beyond what a reasonable person should be expected to endure under

26    similar circumstances.

27

28    75. As a result of Defendants' negligence, Plaintiff has suffered and continues to

suffer severe emotional distress, for which he is entitled to compensatory damages.

COUNT VII: Violations of the Tom Bane Civil Rights Act (Cal. Civ. Code § 52.1)

76. Plaintiff incorporates by reference all previously stated allegations as if fully set forth herein.

77. Constitutional Violation: The Defendants, acting in concert, interfered with Plaintiff's constitutional right to be free from unreasonable seizure under the Fourth Amendment of the U.S. Constitution, as established in Riley v. California.

78. Threats, Intimidation, or Coercion: The Defendants interfered with this right by using threats, intimidation, and coercion, in violation of the principles outlined in Bane v. California.

79. Defendant Olegario Garcia used coercion by making a false police report accusing Plaintiff of brandishing a knife, which was a prerequisite to the police response and false arrest. His retaliatory motive and hostile behavior constituted a coercive act intended to interfere with Plaintiff's liberty, consistent with Shoyoye v. County of Los Angeles.

80. Defendant Officers Kaitlynn Norie, Sadiq Al-Mosawi, Reynaldo Velazquez, Marc Vargas, and Rowdy Pauu used threats and intimidation when they approached Plaintiff with their firearms drawn and pointed at him from 30-40 feet away, even though he was compliant and posed no threat. They further used coercion when they physically twisted his arm while handcuffing him, causing him severe pain, and unlawfully confined him for

approximately 72 hours. This conduct was not justified by the circumstances and was done to intimidate and coerce Plaintiff, as highlighted in Cohen v. City of Los Angeles.

81. Causation and Damages: The Defendants' unlawful and coercive conduct was a substantial factor in causing Plaintiff's injuries. As a direct and proximate result of the violation of his civil rights, Plaintiff suffered damages, including loss of liberty, severe emotional distress, and physical pain from the excessive force used during the arrest, as noted in Doe v. City of Los Angeles.

82. Entitlement to Damages: Pursuant to California Civil Code § 52.1, Plaintiff is entitled to a monetary award for these damages, including punitive damages and attorney's fees, to be determined at trial.

COUNT VIII: Violations of the First Amendment, Freedom of Speech (42 U.S.C. § 1983)

83. Plaintiff incorporates by reference all previously stated allegations as if fully set forth herein.

84. Protected Activity: Plaintiff engaged in a constitutionally protected activity when he called the City of National City to report Defendant Olegario Garcia's hostile and threatening behavior. Reporting misconduct by a government employee is a matter of public concern and is protected speech under the First Amendment, as established in Mack v. City of New York.

85. Adverse Action: Defendant Garcia took an adverse action against Plaintiff that would chill or deter a person of "ordinary firmness" from continuing to engage in that

18

protected activity. Defendant Garcia's adverse action making a false report to law

enforcement,which resulted in Plaintiff's unla was wful arrest, use of excessive force,

and three-daydetention, aligning with the principles outlined in Bennett v. Hendrix.

86. Causal Connection: Plaintiff's protected activity was a substantial or motivating

factor in Defendant Garcia's decision to take the adverse action. Defendant Garcia's

retaliatory motive is demonstrated by the fact that he was within earshot of Plaintiff's

phone call to the City and immediately followed up with the false report that led to the

arrest. The adverse action would not have occurred absent Defendant Garcia's

retaliatory motive, as highlighted in Harris v. City of Santa Monica.

87. Damages: As a direct and proximate result of Defendant Garcia's retaliation in

violation of Plaintiff's First Amendment rights, Plaintiff suffered damages, including loss

of liberty and severe emotional and physical distress. Plaintiff is entitled to a monetary

award for these damages, to be determined at trial.

COUNT IX: Monell Claim (42 U.S.C. § 1983 – Unconstitutional Policies, Customs, and

Practices)

88. Plaintiff re-alleges and incorporates by reference paragraphs 1-63 as if fully set

forth herein.

89. Inadequate Training: The City of National City has a policy and custom of

inadequately training its police officers on de-escalation tactics and the appropriate use

of force, especially in situations involving individuals who are compliant and pose no

immediate threat. This policy results in officers unnecessarily escalating encounters,

19

resorting to excessive force—including the pointing of firearms, forceful handcuffing, and the use of dangerous restraint methods—while failing to prioritize de-escalation techniques. As a direct result of this policy, the Defendant Officers escalated the encounter with Plaintiff, used excessive force against him despite his compliance, and failed to de-escalate the situation, causing Plaintiff physical injury and emotional distress, thereby demonstrating the "deliberate indifference" standard articulated in City of Canton v. Harris.

90. Inadequate Investigation of Misconduct: The City of National City has a policy and custom of inadequately investigating citizen complaints of police misconduct, including excessive force and false arrest, particularly complaints involving individuals with mental health conditions. This policy discourages citizens from reporting misconduct and creates an environment where officers believe they can act with impunity. This inadequacy manifests in the failure to adequately investigate allegations of policy violations, such as those outlined in the National City Policy Manual—Policy 300 – Use of Force. The City's failure to properly investigate and address patterns of excessive force complaints perpetuates this unconstitutional custom. As a direct result of this policy, the Defendant Officers' alleged failure to properly investigate Plaintiff's complaint and their disregard for readily available exculpatory evidence led to Plaintiff's false arrest and prolonged detention, echoing the principles established in Larez v. City of Los Angeles.

91. Ratification and Condonation of Misconduct: The City of National City has a policy and custom of ratifying and condoning the unconstitutional conduct of its officers, including excessive force, false arrest, and First Amendment retaliation, by failing to discipline officers involved in prior incidents of misconduct. The day after Plaintiff was released from custody, he went to the National City Police Department Headquarters to retrieve his property and file a formal complaint. An Internal Affair Detective (John Doe 2)

allegedly stated that he was aware of Plaintiff's arrest and that the officers followed their training. This statement, in light of the alleged prior misconduct incidents and the City's failure to address them, illustrates a deliberate indifference to constitutional violations, as discussed in Bryan County v. Brown. The City's alleged deliberate indifference to the officers' conduct, reinforced by ignored emails to the Mayor and Chief of Police, was a moving force behind the violation of Plaintiff's constitutional rights.

92. Similar Cases/Notice: The City's alleged pattern of deliberate indifference to complaints of misconduct is further demonstrated by the case of Cummins v. City of National City, where a jury awarded a female officer $10 million after finding that the City had a long-standing custom of ignoring complaints of sexual harassment, retaliation, and discriminatory treatment. This case, while dealing with different misconduct, is relevant to Plaintiff's claim of deliberate indifference to excessive force and policy violations complaints. The case of McNeill v. City of National City is substantially similar to Plaintiff's case and demonstrates a pattern of constitutional violations by National City police officers arising from these policies and customs. In McNeill, the failure to de-escalate led to a multi-million dollar settlement, putting the City on notice of its alleged unconstitutional policies and customs regarding de-escalation and excessive force, yet the City allegedly failed to take corrective action, leading directly to the violation of Plaintiff's constitutional rights in this case.

V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff ELOY MASCORRO prays for judgment against Defendants THE CITY OF NATIONAL CITY, OLEGARIO GARCIA, KAITLYNN NORIE, SADIQ AL-MOSAWI, REYNALDO VELAZQUEZ, MARC VARGAS, ROWDY PAUU, and JOHN and JANE and JOHN DOES 1-3, as follows:

a) For compensatory against all Defendants, in an amount to be determined at trial.

b) For punitive damages against Defendants Olegario Garcia, Kaitlynn Norie, Sadiq Al-mosawi, Reynaldo Velazquez, Marc Vargas, Rowdy Pauu, John Doe 1, John Doe 2 and Jane Doe 1 and Jane Doe 2, due to their willful, malicious, and outrageous conduct, which was done with a reckless disregard for Plaintiff's constitutional rights.

c) For attorney's fees and costs as permitted by law.

d) For such other and further relief as the Court may deem just and proper.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: August 22, 2025

Signature:

Name: Eloy Mascorro