UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELOY MASCORRO,<br><br>                                    Plaintiff,<br><br>v.<br><br>THE CITY OF NATIONAL CITY, OLEGARIO GARCIA, KAITLYNN NORIE, SADIQ AL-MOSAWI, REYNALDO VELAZQUEZ, MARC VARGAS, ROWDY PAUU, JANE DOES 1–2, and JOHN DOES 1–2,<br><br>                                    Defendants. | Case No.:  25-CV-2172 JLS (KSC)<br><br>**ORDER:**<br><br>**(1) GRANTING APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS**<br><br>**(2) SCREENING COMPLAINT, AND**<br><br>**(3) DIRECTING U.S. MARSHAL TO EFFECT SERVICE**<br><br>(ECF Nos. 1, 2) |

Presently before the Court is Plaintiff Eloy Mascorro's Complaint ("Compl.," ECF No. 1) and Application to Proceed in District Court Without Prepaying Fees or Costs ("IFP Appl.," ECF No. 2).  Having carefully considered Plaintiff's Complaint, Application, and the applicable law, the Court **GRANTS** Plaintiff's IFP Application, **DIRECTS** the Clerk of Court to issue summons, and **DIRECTS** the U.S. Marshal to effect service.

/ / /

/ / /

### *IN FORMA PAUPERIS* APPLICATION

All parties instituting a civil action, suit, or proceeding in a district court of the United States, other than a petition for writ of habeas corpus, must pay a filing fee of $405.[1] 28 U.S.C. § 1914(a). An action may proceed despite a party's failure to pay the filing fee only if the party is granted leave to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a)(1).

Section 1915(a)(1) provides:

> [A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding . . . without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such [person] possesses that the person is unable to pay such fees or give security therefor.

As § 1915(a)(1) does not itself define what constitutes insufficient assets to warrant IFP status, the determination of indigency falls within the district court's discretion. *See Cal. Men's Colony v. Rowland*, 939 F.2d 854, 858 (9th Cir. 1991) ("Section 1915 typically requires the reviewing court to exercise its sound discretion in determining whether the affiant has satisfied the statute's requirement of indigency."), *reversed on other grounds by* 506 U.S. 194 (1993). "An affidavit in support of an IFP application is sufficient where it alleges that the affiant cannot pay the court costs and still afford the necessities of life." *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015) (citing *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948)). "One need not be absolutely destitute to obtain benefits of the [IFP] statute." *Jefferson v. United States*, 277 F.2d 723, 725 (9th Cir. 1960). "Nevertheless, a plaintiff seeking IFP status must allege poverty 'with some particularity, definiteness[,] and certainty.'" *Escobedo*, 787 F.3d at 1234.

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $55. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The additional $55 administrative fee does not apply to persons granted leave to proceed *in forma pauperis*. *Id.*

25-CV-2172 JLS (KSC)

In Plaintiff's IFP Application, Plaintiff states that his monthly income is $352: $292 from welfare and food stamps and $60 from an unspecified "other." IFP App. at 2–5. Plaintiff lists his monthly expenses as $292 for food, $20 for clothing, and $30 for laundry and dry cleaning. *Id.* at 4. Plaintiff reports that he has spent or will spend $50 in legal fees in conjunction with this lawsuit. *Id.* at 5. Plaintiff lists no assets, employer, or savings beyond $17 in a PayPal account. *See generally id.*

The Court is satisfied that Plaintiff has adequately demonstrated that paying the $405 filing fee would result in his inability to afford the necessities of life. Accordingly, the Court **GRANTS** Plaintiff's IFP Application.

## SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)

### I.    Legal Standard

Because Plaintiff seeks to proceed IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2). *See, e.g.*, *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2002) (per curiam) (holding "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners"); *see also Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) ("[S]ection 1915(e) not only permits but requires a district court to dismiss an [IFP] complaint that fails to state a claim."). Under this statute, the Court *sua sponte* must dismiss a complaint, or any portion of it, that is frivolous, malicious, fails to state a claim, or seeks damages from immune defendants. *See Lopez*, 203 F.3d at 1126–27. "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citations omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Plausibility requires pleading facts supporting a claim for relief, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard.  *Iqbal*, 556 U.S. at 678–79; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Further, courts have a duty to construe a pro se litigant's pleadings liberally.  *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).  A district court should grant leave to amend if it appears "at all possible that the plaintiff can correct the defect."  *Lopez*, 203 F.3d at 1130 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988)).

## II.    Plaintiff's Allegations

On August 22, 2025, Plaintiff filed the instant Complaint alleging nine causes of action pursuant to both Federal and California law.  *See generally* Compl.  Plaintiff alleges that Defendants, The City of National City ("National City"); Kaitlynn Norie, National City police officer; Sadiq Al-Mosawi, National City police officer; Reynaldo Velazquez, National City police officer; Marc Vargas, National City police officer; Rowdy Pauu,[2] National City police officer; Olegario Garcia, National City maintenance worker; Jane Doe 1, unidentified plainclothes female police officer; John Doe 1, unidentified plainclothes city maintenance supervisor; Jane Doe 2, unidentified EMT/Paramedic; and John Doe 2, unidentified Internal Affairs Detective, violated his Fourth and First Amendment rights under 42 U.S.C. § 1983 and California state law.  *Id.* at 2–3.  Under § 1983, Plaintiff alleges false arrest, unreasonable force, retaliation, and a Monell Claim.  *See generally id.*  Under

---

[2] Norie, Al-Mosawi, Velazquez, Vargas, and Pauu will be referred to as "Defendant Officers" throughout this Order.

California law, Plaintiff alleges malicious prosecution,[3] false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, and violations of the Tom Bane Civil Rights Act (Cal. Civ Code § 52.1).  *See generally id.*

Specifically, Plaintiff alleges that, on or around July 25, 2024, he was wrongfully accused and arrested for brandishing a knife towards Defendant Garcia.  *Id.* ¶¶ 14–22.  At approximately 8 a.m., Plaintiff alleges that he was repairing a flat tire on his bicycle when Garcia approached him and accused him of littering.  *Id.* ¶¶ 14–15.  Plaintiff informed Garcia that the debris was likely from a nearby maintenance worker, which Garcia investigated and concluded that Plaintiff was responsible.  *Id.*  ¶ 14.  Garcia approached Plaintiff "displaying a hostile demeanor" and accused Plaintiff again of littering.  *Id.*  Plaintiff, "fearing for his safety and experiencing anxiety," told Garcia to get away and retrieved "his legally possessed pepper spray."  *Id.* ¶ 15.  Plaintiff alleges that he did not brandish a knife.  *Id.*  Garcia returned to his vehicle and yelled, "You ain't shit without your shit," at Plaintiff as he walked away.  *Id.* ¶ 16.

Plaintiff's cell phone, which was mounted on the bicycle, recorded the interaction.  *Id.* ¶ 14.  Plaintiff also photographed Garcia's "City vehicle" and recorded the scene to report the incident and "capture evidence in anticipation of further retaliatory actions from Defendant Garcia."  *Id.* ¶¶ 14–19.  Plaintiff called a number noted on the city vehicle and spoke with a "female representative" requesting to file an official complaint against Garcia.  *Id.* ¶ 17.  A "supervisor" returned Plaintiff's call, and Plaintiff described the incident.  *Id.*

Around 8:20 a.m., Defendant Officers Norie, Al-Mosawi, Velazquez, Vargas, and Pauu arrived at the scene in uniform.  *Id.* ¶ 20.  Plaintiff then alleges that each officer drew their firearm, pointed them at Plaintiff, and directed him to get off his bike, walk backwards, and raise his hands—with which Plaintiff complied.  *Id.*  Plaintiff informed them that he only "possessed a phone and a pocketknife."  *Id.*  Plaintiff further complied

---

[3] While unclear in the Complaint, the Court presumes that Plaintiff's malicious prosecution claim is brought under both California law and § 1983.

with the officers' instructions to lay on the ground on his stomach where he was handcuffed, "applying force to his arms and causing severe pain to his shoulder." *Id.* ¶ 21.

Defendant Officers stated that Garcia had reported Plaintiff brandishing a knife. *Id.* ¶ 22. Plaintiff continuously attempted to explain to Defendant Officers that he had a recording of the incident and that surveillance footage from the Chamber of Commerce would demonstrate that he only retrieved his pepper spray. *Id.* Plaintiff alleges that Defendant Officers had "adequate time to conduct a thorough investigation before making an arrest" and repeatedly "ignored Plaintiff's requests to review the recording and investigate exculpatory evidence." *Id.* Plaintiff yelled at Jane Doe 1 and John Doe 1 about the alleged exculpatory evidence and was again ignored. *Id.* ¶¶ 23–24.

Plaintiff complained of shoulder pain and requested medical attention, which was not addressed for forty-five (45) minutes. *Id.* ¶ 27. Jane Doe 2, a medical assistant, examined Plaintiff and "accused [him] of faking his injury, making a derogatory statement about homeless individuals," which added to the "emotional and physical distress Plaintiff endured as a result of the arrest." *Id.*

Plaintiff was booked at the San Diego Downtown Jail and was released seventy-two hours later with no charges filed. *Id.* Plaintiff now brings the present action requesting compensatory damages against all Defendants, punitive damages against Defendant Officers, Garcia, and Doe Defendants, and attorney's fees. *Id.* at 22.

## III. Analysis

First, the Court must address whether Plaintiff has stated a claim under 42 U.S.C. § 1983 for purposes of establishing jurisdiction under 28 U.S.C. § 1331. Plaintiff alleges four potential causes of action under § 1983: false arrest and unreasonable seizure under the Fourth Amendment (Claim II), excessive force under the Fourth Amendment (Claim III), retaliation under the First Amendment (Claim VIII), and unconstitutional policies,

customs, and practices through a Monell Claim (Claim IX).[4]  *See generally* Compl.

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Conner*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted).  To state a claim under § 1983, a plaintiff must allege both that (1) the defendant was acting under color of state law at the time the complained of act was committed, and (2) the defendant's conduct deprived the plaintiff of a right secured by the Constitution and laws of the United States. *Tsao v. Desert Palace*, 698 F.3d 1128, 1138 (9th Cir. 2012) (citing *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011)).

### A. Under Color of State Law

A defendant acts under color of state law when she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941).  A defendant may act under color of state law where her conduct "satisfies the state-action requirement of the Fourteenth Amendment," i.e., "the defendant's alleged infringement of the plaintiff's federal rights is 'fairly attributable to the State.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).  The Ninth Circuit has identified "three critical requirements that must be satisfied" for finding that a defendant has acted under color of state law: (1) the defendant pretended or purported to act in the performance of her official duties, (2) "with the purpose and effect of influencing the behavior of others," and (3) the challenged conduct must be related in some meaningful way to the officer's government status or performance of her duties.  *Anderson v. Warner*, 451 F.3d 1063, 1068–69 (9th Cir. 2006) (first citing *McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000); then citing *Martinez v. Colon*, 54 F.3d 980, 987 (1st Cir. 1995)).

/ / /

---

[4] Claim II is alleged against Defendant Officers and Garcia.  Claim III is alleged against Defendant Officers.  Claim VIII is alleged against Garcia.  Claim IX is alleged against National City.

For purposes of § 1983, a police officer acts under color of state law if she is clothed with authority of the state and is purporting to act under that authority. *See Atkins*, 487 U.S. at 49–50 ("[A] public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."). Therefore, Defendant Officers were acting under color of law through all the events alleged, as they were on-duty police officers engaged in their official duties.

However, whether Garcia, a city maintenance worker, was acting under color of state law for allegedly falsely reporting Plaintiff requires further analysis. Plaintiff alleges that Garcia was acting "under color of state law" for purposes of the false arrest and retaliation claims. *See* Compl. ¶ 38. While Garcia was on duty, not every action taken by a public officer on duty is taken under color of state law. *See, e.g.*, *Savarese v. City of New York*, 547 F. Supp. 3d 305, 337 (S.D.N.Y. 2021) (finding that an on-duty traffic agent was not acting under color of state law when he reported a crime of which he was the alleged victim); *Cruz v. Donnelly*, 727 F.3d 79, 30 (3rd Cir. 1984) ("Merely calling the police and assisting them in investigating a crime does not constitute acting under the color of law. . . ."). Acts of a public officer in furtherance of "personal pursuits" are plainly excluded from the definition of under color of state law. *Screws v. United States*, 325 U.S. 91, 111 (1945).

At the screening stage, the Court finds that Plaintiff has sufficiently alleged that Garcia was acting under color of state law when making the phone call at issue. Plaintiff alleges that Garcia was "a maintenance worker employed by the City of National City" and was "operating a city vehicle." Compl. ¶¶ 3, 15. Here, while unclear what Garcia's role was as a city maintenance employee, Garcia may have been acting in furtherance of his duties by attempting to prevent littering. The Court notes that it is unclear whether Garcia made the allegedly false phone call as a part of his official duties or because he felt personally victimized. *See, e.g.*, *Muhammad v. Jenkins*, No. CV 19-7970-JAK (PVC), 2022 WL 363004, at * 10 (C.D. Cal. Jan. 14, 2022) (denying summary judgment as to whether the defendant city bus driver acted under color of state law because she could have

8

called 911 either in her official capacity to protect the passengers or "purely in her self-interest"). At a later stage, with more facts, the Court may find that "[i]n reporting to the police what [Garcia] saw and experienced, he was not invoking any authority granted to him as a [public employee] but exercising the rights he had as a civilian." *Savarese*, 547 F. Supp. 3d at 339. At this stage, the Court finds that Plaintiff has sufficiently pled that Garcia was acting under color of state law.

Therefore, Plaintiff has sufficiently alleged that Defendant Officers and Garcia were acting under color of state law for purposes of a § 1983 claim.

### B. Deprivation of a Right Secured by the Constitution or Laws of the United States

Under Section 1983, a defendant deprives another of a constitutional right if the defendant "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Id.*

### 1. 42 U.S.C. § 1983 False Arrest and Unreasonable Seizure

In Claim II, Plaintiff alleges that Defendant Officers and Garcia violated his Fourth Amendment right to be "free from unreasonable seizure by arresting and detaining him without probable cause." Compl. ¶ 38. Plaintiff alleges that Defendant Officers were "on notice that they had received a potentially false report from [Garcia]" and that by failing to review any readily available video footage of the incident, Defendant Officers failed to reasonably investigate the absence of probable cause. *Id.* ¶¶ 39–43.

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City and Cnty. of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001); *see, e.g.*, *Cabrera v. City of Huntington Beach*, 159 F.3d 374, 380 (9th Cir. 1998) (citing *George v. City of Long Beach*, 973 F.2d 706, 710 (9th Cir. 1992)) (stating that where an officer has

probable cause to arrest, she cannot be liable for false arrest).  Probable cause exists when "there is a fair probability or substantial chance of criminal activity."  *United States v. Patayan Soriano*, 361 F.3d 494, 505 (9th Cir. 2004) (quoting *United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001)).  "It is well-settled that 'the determination of probable cause is based upon the totality of the circumstances known to the officers at the time of the search.'"  *Id.* (quoting *Bishop*, 264 F.3d at 924).  "While an officer may not ignore exculpatory evidence that would negate a finding of probable cause, '[o]nce probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused.'"  *Tsao v. Desert Palace*, 698 F.3d 1128, 1147 (9th Cir. 2012) (quoting *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003)).

In the Ninth Circuit, "[i]n establishing probable cause, officers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses."  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) (citing *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1444 (9th Cir. 1991)); *see also Hopkins v. Bonvicino*, 573 F.3d 752, 767 (9th Cir. 2009) ("[S]tatements from a witness, without further investigation by the police, are insufficient to support probable cause.").  While officers can rely upon information from a witness to establish reasonable suspicion for a *Terry* stop, they cannot establish probable cause solely on witness information.  *See Thomas v. City of Portland*, No. 05-1059-ST, 2007 WL 2286254, at *11 (D. Or. Aug. 3, 2007) (first citing *Adams v. Williams*, 407 U.S. 143, 147 (1972); then citing *Fuller*, 950 F.2d at 1444); *see also Smith v. City of the Dalles*, No. 16-cv-1771-SI, 2021 WL 2287421, at *16–19 (D. Or. June 4, 2021) (finding reasonable suspicion for a *Terry* stop, but not probable cause to arrest because the officer had *only* the uncorroborated citizen witness 911 testimony, did not question plaintiff beyond a general denial, and did not interview the reporting witness or any other potential witnesses).

/ / /

/ / /

a. Defendant Officers

Here, Defendant Officers responded to a call that Plaintiff "pulled a knife," a potential violation of California Penal Code § 417.[5]  Compl. Ex A. at 25.  This report from an identified 911 caller, Garcia, corroborated by Plaintiff at the scene possessing a pocketknife, created reasonable suspicion to justify a *Terry* stop.  *See, e.g.*, *Terry v. Ohio*, 392 U.S. 1 (1968); *United States v. Terry-Crespo*, 356 F.3d 1170, 1174–77 (9th Cir. 2004) (finding that a non-anonymous 911 call created reasonable suspicion, as the police could "place additional reliability" on a "victim-informant" who sought immediate police assistance); *U.S. v. Drake*, 456 F.3d 771, 775 (7th Cir. 2006) ("We therefore presume the reliability of an eyewitness 911 call reporting an emergency situation for purposes of establishing reasonable suspicion, particularly when the caller identifies herself . . . [and] provide[s] sufficient details to allow the officers to identify the suspects.").

However, Defendant Officers needed probable cause to physically restrain Plaintiff with handcuffs—absent legitimate safety concerns for officers or an intention to evade arrest, neither of which are present here.[6]  *See City of the Dalles*, 2021 WL 2287421, at *8 (first citing *Washington v. Lambert*, 98 F.3d 1181, 1186 (9th Cir. 1996); then citing *United*

---

[5] California Penal Code § 417(a)(1) makes it a misdemeanor to "draw[] or exhibit[] any deadly weapon whatsoever, other than a firearm, in a rude, angry, or threatening manner."  Plaintiff's arrest report demonstrates he was arrested for this offense.  Specifically, for being armed with a "[l]ethal [c]utting [i]nstrument."  *See* Compl. Ex. A at 26.

[6] To distinguish between a *Terry* stop and an arrest, courts "consider whether a reasonable person would believe that he or she is being subjected to more than a temporary detention, as well as the justification for the use of such tactics, i.e., whether the officer had sufficient basis to fear for his safety to warrant the intrusiveness of the action taken."  *United States v. Brown*, 996 F.3d 998, 1006 (9th Cir. 2021) (internal citations omitted).  "When considering the safety concerns of the officers, [courts analyze] 'the severity of the crime at issue' and 'whether the suspect poses an immediate threat to the safety of the officers or others.'"  *City of the Dalles*, 2021 WL 2287421, at *8 (quoting *Green v. City & Cnty. of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014)).  Here, taking Plaintiff's allegations as true, Plaintiff complied with all Defendant Officers' requests and did not pose a threat to their safety.  Plaintiff was handcuffed and placed on the ground on his stomach by Defendant Officers whose firearms were drawn.  This is sufficient to allege that the stop had turned into an arrest, as Plaintiff reasonably did not feel free to leave and could not physically leave.

25-CV-2172 JLS (KSC)

*States v. Cervantes-Flores*, 421 F.3d 825, 830 (9th Cir. 2005), *overruled on other grounds by*, *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009)).

Upon arriving at the scene, Defendant Officers, with their firearms drawn, approached Plaintiff and asked him to get off his bike, walk backwards towards them, and lay on the ground on his stomach. Compl. ¶¶ 20–21. Plaintiff complied and informed them that "he only possessed a phone and a pocketknife," that they had received a false report, and that the incident was recorded and easily accessible. *Id.* ¶¶ 21–22. Taking Plaintiff's allegations as true, at no point did Defendant Officers investigate any of Garcia's allegations. They did not review the video footage—whether Plaintiff's own or any surrounding surveillance footage from the Chamber of Commerce—nor did they make any efforts to "independently investigate the basis of the witness' knowledge or interview other witnesses." *Arpin*, 261 F.3d at 925 (citing *Fuller*, 950 F.2d at 1444); *City of the Dalles*, 2021 WL 2287421, at *16–19; *see also Hopkins*, 573 F.3d at 767 (finding that officers did not have probable cause when they obtained no information beyond the witness's report); *Vuz v. DCSS III, Inc.*, 20-cv-246-GPC-AGS, 2020 WL 4366023, at * 11 (S.D. Cal. July 30, 2020) (surviving a motion to dismiss by alleging that officers only interviewed the reporting witnesses and no other witnesses). Defendant Officers still had an obligation to investigate exculpatory evidence as probable cause had not been established. *See Tsao*, 698 F.3d at 1147.

However, for an individual defendant to be liable under § 1983 there must be a showing of personal participation in the rights deprivation. *See Smith v. City of Marina*, 709 F. Supp. 3d 926, 934 (N.D. Cal. 2024) (dismissing and granting leave to amend to clarify which defendants were responsible for which conduct). There is no "team effort" standard which allows a plaintiff to lump all the defendants together, rather than base liability on each defendant's actions. *See Hopkins*, 573 F.3d at 770–71 (citing *Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996)). Under the "integral participant" rule, liability can be extended to those actors who were "integral participants in the constitutional violation, even if they did not directly engage in the unconstitutional conduct themselves."

*Id.*    Here, Plaintiff alleges that all Defendant Officers failed to investigate exculpatory evidence and participated in his unlawful arrest. *See* Compl. ¶ 38.   At the screening stage, the Court finds that Plaintiff has alleged sufficient facts that each Defendant Officer was an "integral participant" in the incident. *See Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022) (holding the integral participant satisfied where "the defendant knows about and acquiesces in the constitutionally defective conduct as part of a common plan with those whose conduct constitutes the violation"); *see Lacroix v. Howard*, No. 22-cv-1956-WQH-BLM, 2023 WL 6120613, at 2–3 (S.D. Cal. Sept. 18, 2023) (finding that plaintiff's allegations survived the "low threshold for screening" using the integral participant rule).

Therefore, Plaintiff has sufficiently alleged a false arrest claim against Defendant Officers.

### b. Garcia

To allege a Fourth Amendment violation by a non-law enforcement governmental party, Plaintiff must demonstrate that Garcia acted "with the intent to assist the government in its investigatory or administrative purposes, and not for an independent purpose." *Arpin*, 261 F.3d at 924 (internal quotation marks omitted) (quoting *United States v. Attson*, 900 F.2d 1427, 1429 (9th Cir. 1990)).   If Plaintiff can demonstrate that Garcia's conduct is subject to the Fourth Amendment, Garcia violated Plaintiff's rights if, "under the circumstances apparent at the time," Garcia "unreasonably caused the restriction of [Plaintiff's] liberty." *See id.*   Here, Plaintiff alleges that Garcia was a city maintenance worker who approached Plaintiff and falsely accused him of littering.   Compl. ¶¶ 15–16. After a hostile interaction, Plaintiff felt threatened and pulled out his pepper spray.   *Id.* Plaintiff reported Garcia to his supervisors; then Garcia reported Plaintiff to the police.   *Id.* ¶ 17, Ex. A at 26.   From these facts, it could be plausibly inferred that Garcia called the police not for an independent purpose, but as a governmental employee acting with the intent to assist National City in preventing littering. *See Arpin*, 261 F.3d at 924.   It is plausible that Garcia reported the incident to the police maliciously to provide a means where the police would take him into custody—potentially violating Plaintiff's Fourth

25-CV-2172 JLS (KSC)

Amendment right. *See id.* Therefore, at the screening stage, Plaintiff alleged sufficient facts that Garcia was acting on behalf of National City and subjected Plaintiff to an unreasonable seizure.

Accordingly, Plaintiff sufficiently stated a claim for false arrest and unreasonable seizure under § 1983 against Defendant Officers and Garcia.

### 2.  *42 U.S.C. § 1983 Unreasonable Force Under the Fourth Amendment*

In Claim III, Plaintiff alleges that Defendant Officers used "objectively unreasonable and excessive force" when they handcuffed him "while he was lying prone, forcefully and unnecessarily yanking his arms behind his back." Compl. ¶¶ 46–48. Plaintiff states that he "was compliant, posed no immediate threat to the officers or others, and made no attempt to resist arrest." *Id.* ¶ 49. Plaintiff allegedly suffered "a rotator cuff injury, physical pain, emotional distress, and fear." *Id.* ¶ 50.

Under the Fourth Amendment, the amount of force used in a seizure or arrest must be "objectively reasonable" under the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). The Ninth Circuit employs a three-step analysis for evaluating reasonableness under *Graham*. *See Harmon v. City of Pocatello*, 854 Fed. App'x 850, 853 (9th Cir. 2021). First, the court must assess "the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force inflicted." *Id.* (citing *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003)). Second, the court assesses the "importance of the government interests at stake" by considering: "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* Third, the court must balance the gravity of the intrusion on the person against the government's need. *Id.*

Here, Plaintiff states that from a distance of "30-40 feet" all Defendant Officers drew their firearms and pointed them at Plaintiff. Compl. ¶ 20. Plaintiff further claims that while he was lying on the ground, Defendant Officers approached him with their guns drawn and "forcefully" pulled his arms behind his back and handcuffed him. *Id.* ¶ 21.

Regarding the gravity of the intrusion, the Ninth Circuit has found that pointing a gun at someone may constitute excessive force, even if it does not cause injury. *See Tekle v. United States*, 511 F.3d 839, 845 (9th Cir. 2007) (citing *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1014–15 (9th Cir. 2002) (en banc)). Further, "wrenching" someone's arm back when they are suspected of a low-level misdemeanor, presented no threat to officers, and did not resist or fight back, has been found sufficient to state a claim for excessive force. *See Hulet v. Cnty. of Tuolumne*, 23-cv-1217-KES-HBK, 2024 WL 3758360, at *10 (E.D. Cal. Aug. 12, 2024); *see also Bryan v. MacPherson*, 630 F.3d 805, 828–29 (9th Cir. 2010) (citing *Headwaters Forest Def. v. Cnty. of Humboldt*, 240 F.3d 1185, 1204 (9th Cir. 2000), *vacated and remanded on other grounds*, 534 U.S. 801 (2001)) ("While the commission of a misdemeanor offense is not to be taken lightly, it militates against finding the force used to effect an arrest reasonable where the suspect was also nonviolent and posed no threat to the safety of the officers or others." (internal quotation marks omitted)).

Plaintiff was suspected of violating California Penal Code § 417, a misdemeanor. Compl. Ex A at 26. While Plaintiff was accused of threatening Garcia with a knife and reported to Defendant Officers that he did have a pocketknife, based on Plaintiff's allegations, he complied with all the Officers' requests, did not attempt to resist arrest, and was not a threat to the Officers. *Id.* ¶¶ 20–22. "The most important *Graham* factor is whether the suspect posed an immediate threat to anyone's safety." *Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019) (citing *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc)). Taking Plaintiff's account of the events as true, Plaintiff did not pose a threat to the Officers. Plaintiff has sufficiently stated a claim that Defendant Officers alleged extended use of firearms and forceful pulling on Plaintiff's arm to restrain him was not objectively reasonable under the circumstances.

As discussed above, for an individual defendant to be liable under § 1983 there must be a showing of personal participation in the rights deprivation. *See Hopkins*, 573 F.3d at 770–71 (citing *Chuman*, 76 F.3d at 295). Here, Plaintiff alleges that all Defendant Officers had their firearms drawn throughout the encounter; however, Plaintiff does not state which

Officer was responsible for pulling his arms behind his back.  *See* Compl. ¶¶ 44–50. Nevertheless, the Court finds that Plaintiff has alleged sufficient facts to state a claim for excessive force as he has alleged that each Defendant Officer was an "integral participant" in the alleged violation.  *See Boyd v. Benton Cnty.*, 374 F.3d 773, 780 (9th Cir. 2004) (finding that officers providing backup were integral participants in another officer's use of excessive force); *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 480 n.12 (9th Cir. 2007) (concluding that an officer who helped handcuff the plaintiff was an integral participant in the other officers' use of excessive force).

Therefore, Plaintiff has sufficiently alleged excessive force pursuant to § 1983 against Defendant Officers.

### 3.  *42 U.S.C. § 1983 Retaliation Under the First Amendment*

In Claim VII, Plaintiff alleges that Garcia violated his First Amendment rights by calling the police with false accusations in retaliation for Plaintiff calling Garcia's supervisors.  Compl. ¶¶ 83–87.  Plaintiff alleges that he called National City to report Garcia's "hostile and threatening behavior" while Garcia "was within earshot." *Id.* ¶ 84, 86.  Garcia then allegedly "immediately followed up with the false report that led to the arrest." *Id.* ¶ 86.

A plaintiff can bring a § 1983 claim alleging that a public official "took action with the intent to retaliate against, obstruct, or chill the plaintiff's First Amendment rights." *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (citing *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)).  A plaintiff must allege that "(1) [she] engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *Id.* (citing *O'Brien v. Welty*, 818 F.3d 920, 933–34 (9th Cir. 2016)).  To succeed, a plaintiff need only demonstrate the defendant "intended to interfere" with plaintiff's First Amendment rights and plaintiff suffered an injury as a result; a plaintiff is not required to

25-CV-2172 JLS (KSC)

prove that their speech was inhibited. *Id.* (citing *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999)).

First, Plaintiff alleges that he engaged in a constitutionally protected activity when he called National City to report Garcia's "hostile and threatening behavior." Compl. ¶ 84. He alleges that reporting misconduct by a government employee is a matter of public concern and is protected under the First Amendment. *Id.* "[T]he law is settled that . . . the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citing *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998)). Further, "[u]nlawful conduct by a government employee . . . is a matter of public concern." *Thomas v. City of Beaverton*, 379 F.3d 802, 809 (9th Cir. 2004); *see also Eng v. Cooley*, 552 F.3d 1062, 1075 (9th Cir. 2009) (finding that speech by a citizen on matters of public concern was a clearly established First Amendment right). Therefore, because Plaintiff was reporting alleged government employee misconduct, Plaintiff has sufficiently alleged that he was engaged in constitutionally protected speech.

Second, Plaintiff alleges that Garcia's false report to the police resulting in his arrest, subjection to excessive force, and three-day detention would "chill or deter a person of ordinary firmness from continuing to engage in that activity." Compl. ¶ 85. The Ninth Circuit has found that retaliatory police action like an arrest or search and seizure would "chill a person of ordinary firmness from engaging in future First Amendment activity." *Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013), *abrogated on other grounds by*, *Nieves v. Bartlett*, 587 U.S. 391 (2019) (finding that allegations of being booked and jailed in retaliation for one's speech is sufficient); *see also Bronner v. San Francisco Super. Ct.*, No. C 09-5001 SI, 2010 WL 2650500, at *5 (N.D. Cal. July 1, 2010) (citing *Landrigan v. City of Warwick*, 628 F.2d 736, 744–45 (1st Cir. 1980)) (noting that a false police report can provide the basis for a § 1983 action if a constitutional harm flows from the report). Here, Plaintiff alleges that he was arrested based solely on Garcia's false report to the police, and this report was due to his constitutionally protected report of Garcia's behavior

to the city.  Plaintiff has sufficiently alleged that being arrested, subjected to alleged excessive force, and detained for three days would chill a person of ordinary firmness from engaging in protected speech.

Third, Plaintiff alleges that his report to the city supervisors was a substantial or motivating factor in Garcia's decision to call the police because Garcia was within earshot of Plaintiff's phone call to the city and "immediately followed up with the false report." Compl. ¶ 86.  "[T]iming can properly be considered as circumstantial evidence of retaliatory intent." *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (citing *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989)); *see also Beck v. City of Upland*, 527 F.3d 853, 868 (9th Cir. 2008) ("[A plaintiff's] showing of a heated personal confrontation followed by a hasty arrest likewise could rationally support a finding of retaliatory animus.").  "Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Pratt*, 65 F.3d at 808)).  Plaintiff must show that the adverse action would not have been taken absent the retaliatory motive. *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (citing *Hartman*, 547 U.S. at 259).

Here, Garcia and Plaintiff got into a heated argument evidenced by Garcia yelling, "You ain't shit without your shit."  Compl. ¶ 16.  Plaintiff then immediately called the phone number written on the back of Garcia's city vehicle and spoke with a "supervisor" about the interaction, which Garcia allegedly overheard.  *Id.* ¶¶ 17, 86.  Defendant Officers then arrived and arrested Plaintiff.  *Id.* ¶ 86.  As discussed above, this arrest was likely without probable cause and based primarily if not solely on Garcia's report.  It is plausible that Garcia's allegedly false report was motivated by Plaintiff's call to his supervisors as he was within earshot.  Therefore, Plaintiff has adequately stated a claim that Garcia acted with an intent to chill.  *See, e.g.*, *Toler v. Paulson*, 551 F. Supp. 2d 1039, 1048 (E.D. Cal. 2008) (stating a claim for First Amendment retaliation where plaintiff publicly criticized the District Attorney's Office, and a DA investigator subsequently filed a false petition for

a TRO); *Johnson v. Erickson*, 20-cv-4168-KES, 2021 WL 201725, at *2 (D.S.D. Jan. 20, 2021) (stating a claim for First Amendment retaliation by alleging that a parole officer filed a false report leading to plaintiff's arrest because plaintiff told him about a lawsuit he was filing against the officer); *cf. Vermeulen v. Jenkins*, No. 13-cv-2007-LJO-BAM, 2014 WL 2154448, at *3 (E.D. Cal. May 22, 2014) (dismissing retaliation claim because plaintiff failed to allege that defendants had any knowledge of the alleged criticism causing retaliation).

As discussed above, Plaintiff has plausibly alleged that Garcia was acting in his role of a city employee when he made the phone call in question. Therefore, Plaintiff has adequately stated a claim for retaliation under § 1983.

### 4. 42 U.S.C. § 1983 Monell Claim

In Claim IX, Plaintiff alleges that National City is liable for deprivations of his constitutional rights resulting from their formal policies or customs under *Monell*. *See* Compl. ¶ 89; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691–95 (1978). Plaintiff alleges that National City inadequately trains its police officers on de-escalation tactics and the appropriate use of force. Compl. ¶ 89. Plaintiff further alleges that National City has a policy and custom of "inadequately investigating citizen complaints of police misconduct" and ratifying police misconduct by failing to discipline officers. *Id.* ¶¶ 90–91.

A local government, such as National City, can be sued under § 1983 for deprivations of constitutional rights resulting from their formal policies or customs. *Monell*, 436 U.S. at 691–95. To hold a municipality liable, a plaintiff must allege: (1) the plaintiff was deprived of a constitutional right, (2) the municipality had a policy, (3) this policy amounts to deliberate indifference to the plaintiff's rights, and (4) the policy is the moving force behind the violation. *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996) (quoting *Oviatt v. Pearce*, 945 F.2d 1470, 1474 (9th Cir. 1992)). "Municipalities may be liable under § 1983 for constitutional injuries pursuant to: (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise or discipline; or (4) a

decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019) (citing *Monell*, 435 U.S. at 693–95).

Here, Plaintiff alleges failure to train officers on use of excessive force and de-escalation techniques, a pervasive practice of failing to investigate citizen complaints of police misconduct, and ratification of police misconduct by failure to discipline officers. Compl. ¶¶ 89–91.

### a. Failure to Train

Plaintiff must sufficiently allege that National City's failure to train amounted to "deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A failure to train must reflect "a deliberate or conscious choice by a municipality." *Id.* at 389 (internal quotation marks omitted). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation marks omitted) (quoting *Bd. of Cnty. Com'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). When city policymakers are "on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights," the city may be found deliberately indifferent if they chose to retain that program. *Id.* To demonstrate that failure to train amounts to deliberate indifference, it is "ordinarily necessary to demonstrate a pattern of similar constitutional violations by untrained employees." *Scalia v. Cnty. of Kern*, 308 F. Supp. 3d. 1064, 1078 (E.D. Cal. 2018) (internal quotation marks omitted) (quoting *Connick*, 563 U.S. at 62).

Here, Plaintiff alleges, in a conclusory manner, that the actions of Defendant Officers the day of the incident were "a direct result" of inadequate training by National City. Compl. ¶ 89. Alleging misconduct on the part of a handful of officers is insufficient to allege a program-wide policy of deliberate indifference. *See Hyde v. City of Willcox*, 23 F.4th 863, 874 (9th Cir. 2022) ("While deliberate indifference can be inferred from a single incident when the unconstitutional consequences of failing to train are patently obvious

. . . an inadequate training policy itself cannot be inferred from a single incident." (internal citations omitted)).    Plaintiff attempts to allege a "pattern of similar constitutional violations" based on the cases of *McNeil v. City of National City* and *Cummins v. City of National City*.[7]    Compl. ¶ 92.    However, Plaintiff does not allege factual similarities between these cases and the current incident and does not allege any other instances of excessive force to suggest a failure to train.    *See Hendrix v. City of San Diego*, 20-CV-45 TWR (NLS), 2021 WL 3892671, at *8 (S.D. Cal. Aug. 11, 2021) (dismissing a failure to train claim because plaintiff did not allege similar constitutional violations to the one at issue); *Zahn v. Flathead Cnty.*, CV 23-65-M-DLC, 2024 WL 1374723, at *5 (D. Mont. Apr. 1, 2024) (finding that citing to four other prior shootings was insufficient to show a custom because plaintiff failed to allege factual similarities or constitutional violations); *Gonzalez v. City of Huntington Beach*, SA CV 18-953-DOC (DFMx), 2018 WL 9537311, at *7 (C.D. Cal. Oct. 12, 2018) (dismissing a failure to train claim because plaintiff solely relied on the incident in question).

Therefore, Plaintiff's failure to train *Monell* claim is **DISMISSED WITH LEAVE TO AMEND** to allow Plaintiff to allege a pattern of similar constitutional violations.

b.  Policy or Custom of Failure to Investigate Citizen Complaints

Plaintiff further alleges that National City has a policy and custom of "inadequately investigating citizen complaints of misconduct," which "discourages citizens from reporting misconduct and creates an environment where officers believe they can act with impunity."    Compl. ¶ 90.    Plaintiff alleges that this failure to investigate patterns of

---

[7] The Court presumes that Plaintiff is referring to *Davis v. City of National City*, 19-cv-534-AJB-AHG, 2020 WL 6799380 (S.D. Cal. Nov. 19, 2020) and *Cummins v. City of Nat'l City*, 37-2022-00004671-CU-OE-CTL, 2023 Cal. Super. LEXIS 36971 (S.D. Super. Ct. May 26, 2023), generally.    *See* John Carroll, *National City Oks $300K Settlement With Early McNeil's Family*, KPBS (Sept. 22, 2021 at 1:33 PM PDT), https://www.kpbs.org/news/public-safety/2021/09/22/national-city-approves-300000-settlement-family-ea; Jeff McDonald & Tammy Murga, *Jury awards $10M to former officer who accused National City police of discrimination, harassment*, SAN DIEGO UNION-TRIBUNE (Apr. 1, 2025), https://www.sandiegouniontribune.com/2025/04/01/jury-awards-10m-to-former-officer-who-accused-national-city-police-of-discrimination-harassment/.

excessive force "perpetuates this unconstitutional custom" and ultimately led to Defendant Officers' failure to investigate possible exculpatory evidence, Plaintiff's false arrest, and prolonged detention. *Id.*

Allegations of an unconstitutional policy or custom will be sufficient where they "(1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference." *Herd v. Cnty. of San Bernardino*, 311 F. Supp. 3d 1157, 1167 (C.D. Cal. 2018) (quoting *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1163 (E.D. Cal 2009)). This policy must be the proximate cause of the § 1983 injury. *Van Ort*, 92 F.3d at 837 (citing *Mann v. City of Tucson, Dep't of Police*, 782 F.2d 790, 793 (9th Cir. 1986)).

Here, Plaintiff again alleges in a conclusory manner that there is a policy or custom of inadequately investigating citizen complaints and attempts to connect the potential constitutional violations by Defendant Officers to this alleged custom. *See* Compl. ¶ 90. Plaintiff has failed to allege any facts that this policy or custom exists or, assuming the policy does exist, how it led to a constitutional violation in this case. *See Hendrix*, 2021 WL 3892671, at *10 (dismissing a policy/custom *Monell* claim because plaintiff failed to allege that the policy in question exists, that it was the "moving force" behind the constitutional violation, and how that policy reflected deliberate indifference on the part of the city).

Therefore, Plaintiff's policy/custom *Monell* claim is **DISMISSED WITH LEAVE TO AMEND**.

### c. Ratification

Plaintiff further alleges that National City ratifies and condones "unconstitutional conduct of its officers, including excessive force, false arrest, and First Amendment retaliation, by failing to discipline officers involved in prior incidents of misconduct." Compl. ¶ 91. To support this assertion, Plaintiff alleges that after his release from custody, he went to the National City Police Department Headquarters to file a formal complaint.

*Id.* Plaintiff then alleges that "[a]n Internal Affair Detective (John Doe 2)" stated he was aware of the arrest and that the officers followed their training. *Id.*

Plaintiff has failed to allege a ratification claim. To plead ratification, a plaintiff must allege that the "authorized policymakers approve[d] a subordinate's decision and the basis for it." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). "The policymaker must have knowledge of the constitutional violation and actually approve of it. . . ." *Herd*, 311 F. Supp. 3d at 1167 (citing *Lytle*, 382 F.3d at 987)). Assuming an Internal Affair Detective qualifies as an "authorized policymaker," Plaintiff needs to allege more than a singular incidence of an alleged failure to discipline. *See Koenig v. City of Bainbridge Island*, No. C10-5700 RJB, 2011 WL 3759779, at *8 (W.D. Wash. Aug. 25, 2011) ("[I]n order for there to be ratification, there must be something more than a single failure to discipline or the fact that a policymaker concluded that the defendant officer's actions were in keeping with the applicable policies and procedures." (internal citations omitted)); *see Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 788 (9th Cir. 2022) (finding that a failure to discipline does not meet the requirements of ratification).

Therefore, Plaintiff's ratification *Monell* claim is **DISMISSED WITH LEAVE TO AMEND**.

### C. California State Law Claims

As Plaintiff has stated a claim under § 1983, the Court now considers Plaintiff's allegations under California law. Plaintiff alleges: (1) malicious prosecution against Garcia, (2) false imprisonment against "Defendants,"[8] (3) intentional infliction of emotional distress against Garcia and Jane Doe 2, (4) negligent infliction of emotional distress against Defendant Officers, and (5) violations of the Tom Bane Civil Rights Act against Defendant Officers and Garcia. *See generally* Compl. The Court considers each in turn.

---

[8] Plaintiff does not specify which Defendants this claim is brought against. *See* Compl. ¶¶ 51–55. The Court assumes Plaintiff brings this claim against Defendant Officers as the false imprisonment section alleges that "Defendants lacked probable cause to arrest Plaintiff." *Id.* ¶ 54.

*1. Malicious Prosecution*

In Claim I, Plaintiff alleges that Garcia made a false report resulting in Plaintiff's arrest and subsequent release from custody without charges seventy-two hours later. Compl. ¶¶ 31–32. Plaintiff argues that Garcia acted with malice when he made the false report, "motivated by an improper purpose stemming from Plaintiff's phone call to Garcia's supervisor to complain about his aggressive behavior." *Id.* ¶ 34.

To state a claim for malicious prosecution, a plaintiff must demonstrate "that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in [plaintiff's] favor; (2) was brought without probable cause; and (3) was initiated with malice." *Bertero v. National General Corp.*, 13 Cal. 3d 43, 50 (1974) (internal citations omitted). Importantly, a "prior action" for purposes of stating a malicious prosecution claim must be one with "some adjudicatory involvement by a court" and not one based solely on a warrantless arrest where no charges are filed. *Van Audenhove v. Perry*, 11 Cal. App. 5th 915, 925 (2017) (finding that "an arrest, without formal charges, is not a sufficient foundation for a malicious prosecution claim"); *see also Holmes v. Harris*, No. CV 18-3739 PSG (Ex), 2019 WL 2895632, at *4 (C.D. Cal. 2019) (finding that plaintiff could not bring a malicious prosecution claim under California law because, "although she was arrested, charges were never filed against her"). Here, because Plaintiff was released without charges being filed, Plaintiff cannot state a claim for malicious prosecution under California law.

Malicious prosecution can also be a cause of action under § 1983. Plaintiff does not allege that he is bringing this claim under § 1983, unlike the rest of his § 1983 causes of action. *See generally* Compl. Construing his Complaint liberally, the Court considers malicious prosecution under § 1983 and concludes that Plaintiff has also failed to state a claim. Plaintiff must show that Garcia "prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1188 (9th Cir. 1995) (citations omitted). However, filing charges is also a requirement to state a claim

under § 1983.  *See Correa v. Whittier City Police Dep't*, No. 22-cv-00581-VBF (MAA), 2023 WL 4409118, at *6 (C.D. Cal. March 14, 2023).

Federal Rule of Civil Procedure 15(a) "provides that leave to amend should be freely granted 'when justice so requires.'"  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citing Fed. R. Civ. P. 15(a)).  "Nevertheless, a district court need not grant leave to amend where the amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the party seeking amendment has acted in bad faith."  *Nickles v. United States*, 699 F. Supp. 3d 898, 925 (E.D. Cal. 2023) (citing *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)); *see also Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).  The Court concludes that amendment would be futile because no charges were filed.

Accordingly, Plaintiff's malicious prosecution claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

### 2.  False Imprisonment

In Claim IV, Plaintiff alleges that "Defendants"[9] "intentionally, unlawfully, and without legal justification confined Plaintiff for approximately [seventy-two] hours by arresting and detaining him without probable cause."  Compl. ¶ 52.

"Under California law, the torts of false arrest and false imprisonment are not separate torts, as false arrest is 'but one way of committing a false imprisonment.'"  *Watts v. Cnty. of Sacramento*, 256 F.3d 886, 891 (9th Cir. 2001) (quoting *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 752 n.3 (1997)).  A false imprisonment claim based on an unlawful arrest arises where "there was an arrest without process followed by

---

[9] Plaintiff does not specify which Defendants this claim is brought against.  *See* Compl. ¶¶ 51–55.  The Court assumes Plaintiff brings this claim against Defendant Officers.

imprisonment." *Watts*, 256 F.3d at 891 (citations omitted).  The elements of a claim for false imprisonment under California law are: "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1169 (9th Cir. 2011) (internal quotation marks and citations omitted).

Here, Plaintiff alleges that he did not consent to be confined and that he was in custody for seventy-two hours—sufficiently alleging the first and third elements.  Compl. ¶¶ 52–53.

With respect to element two, "without lawful privilege," a law enforcement officer is not liable for false imprisonment arising out of an arrest if "[t]he arrest was lawful" or the officer "at the time of the arrest, had reasonable cause to believe the arrest was lawful." Cal. Pen. Code § 847(b)(1).  "California courts speak of 'reasonable cause' and 'probable cause' interchangeably." *Cornell v. City and Cnty. of San Francisco*, 17 Cal. App. 5th 766, 786 (2017) (declining to define, absent legislative authorization, that § 847 adds "an additional layer of protection from civil liability beyond . . . probable cause").  Here, as discussed above, Plaintiff has sufficiently alleged that Defendant Officers arrested him without probable cause.  Therefore, Plaintiff has sufficiently alleged false imprisonment against Defendant Officers.

### 3.  Intentional Infliction of Emotional Distress

In Claim V, Plaintiff alleges that Garcia and Jane Doe 2, an unidentified EMT/Paramedic, "engaged in a course of conduct that, taken in its totality, was extreme, outrageous, and beyond all bounds of decency tolerated in a civilized society."  Compl. ¶ 57.

///

///

///

///

///

26

Under California law, to state a claim for intentional infliction of emotional distress (IIED), Plaintiff must allege:

> (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by [the] defendant's outrageous conduct.

*Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996) (citing *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991)).  "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Miller v. Fortune Com. Corp.*, 223 Cal. Rptr. 3d 133, 143 (Ct. App. 2017).  There is no bright line rule for when conduct qualifies as outrageous, and it is typically a question of fact for the jury. *So v. Shin*, 212 Cal. App. 4th 652, 671 (2013).  "A court may dismiss such claims as a matter of law if the conduct alleged is insufficiently outrageous, particularly where the conduct alleged amounts to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'"  *Morse v. Cnty. of Merced*, No. 16-cv-142-DAD-SKO, 2016 WL 3254034, at *13 (E.D. Cal. June 13, 2016) (quoting *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009)).

### a.  Garcia

Plaintiff alleges that Garcia[10] "knowingly made a false report to law enforcement" that he knew or should have known "would lead to Plaintiff's arrest, detention, and the

---

[10] The Court notes that Garcia, at this stage, is not statutorily immune from an IIED claim.  California Civil Code section 47 provides that "any official proceeding authorized by law" is privileged.  The purpose of section 47 is to provide citizens with "free and open access to government agencies for the reporting of suspected illegal activity." *Williams v. Taylor*, 129 Cal. App. 3d 745, 754 (1982).  However, effective January 1, 2021, the California Legislature amended § 47(b) adding an exception to the absolute privilege for "any communication between a person and law enforcement agency in which the person makes a false report . . . knowing that the report is false, or with reckless disregard for the truth or falsity of the report." Cal. Civ. Code § 47(b)(5).  Therefore, taking Plaintiff's allegations as true, Garcia is not absolutely privileged based on his call to law enforcement because it was intentionally false.  Further, if Garcia is found to have made the call pursuant to his duties as a city maintenance employee, he is also not statutorily immune.  Pursuant to California Government Code § 821.6, "[a] public employee is not liable for injury

foreseeable emotional distress associated with being falsely accused of a crime." Compl. ¶ 58. The conduct alleged by Plaintiff goes beyond "mere insults." Plaintiff alleges that Garcia intentionally made a false report with the purpose of harassing and seeking retribution against Plaintiff. Compl. ¶¶ 58–59. Therefore, Plaintiff has sufficiently stated a claim for IIED against Garcia. *See Morse*, 2016 WL 3254034, at *13 (surviving a motion to dismiss where plaintiff alleged that "individual defendants knowingly misrepresented information in order to arrest him and charge him with murder" to "exact political retribution against plaintiff's father").

### b. Jane Doe 2

Plaintiff alleges that, while in custody, Jane Doe 2 "acted with reckless disregard for Plaintiff's emotional well-being by accusing him of faking his injuries." Compl. ¶ 60. Jane Doe 2 is a medical professional who treated Plaintiff after his arrest. *Id.* ¶ 27. Jane Doe 2 allegedly accused him of faking his injuries and compared Plaintiff to "homeless people [who] lie about having a heart attack." *Id.* ¶ 60. The Court finds that this conduct is not sufficiently outrageous to state a claim for IIED and rather is a "mere insult." *Morse*, 2016 WL 3254034, at *13. Therefore, the IIED claim against Jane Doe 2 is **DISMISSED WITH LEAVE TO AMEND**.

### 4. *Negligent Infliction of Emotional Distress*

In Claim VI, Plaintiff alleges that Defendant Officers "breached their duty of care to Plaintiff by negligently failing to conduct a reasonable investigation" and "refrain from using excessive force." Compl. ¶ 64.

---

caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." However, this immunity does not apply if the injury is "caused by acts that are merely investigatory and unconnected to the prosecution of any official proceeding." *Leon v. Cnty. of Riverside*, 14 Cal. 5th 910, 926 (2023). Therefore, because there were no formal charges brought against Plaintiff, Garcia is not immune if found to be acting as a public employee. *See id.* (finding § 821.6 immunity does not apply in a case where no charges are ever filed and no judicial proceeding is ever prosecuted).

Under California law, "[a] claim of negligent infliction of emotional distress is not an independent tort but the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply." *Belen v. Ryan Seacrest Productions, LLC*, 65 Cal. App. 5th 1145, 1165 (2021) (internal quotation marks omitted). In a lawful police encounter, "police officers have a duty not to use excessive force." *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1164 (N.D. Cal. 2009) (quoting *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1101 (2004)).

Here, because Plaintiff has sufficiently alleged an excessive force claim, Plaintiff has also sufficiently alleged a negligent infliction of emotional distress (NIED) claim based on excessive force. *See J.C. v. City of Vallejo*, 24-CV-1879-JAM-AC, 2025 WL 1135045, at *5 (E.D. Cal. Apr. 17, 2025) (finding that alleging excessive force was sufficient to allege NIED on the same grounds). Further, as discussed above, Plaintiff has sufficiently alleged false arrest and false imprisonment against Defendant Officers, which creates sufficient grounds for an NIED claim to survive screening. *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 n.4 (9th Cir. 2008) (noting that the district court had dismissed a claim for negligent infliction of emotional distress because it was predicated on a claim for false arrest, which was also dismissed); *see also Baker v. Rodriguez*, SACV 11-138-JST (PJWx), 2012 WL 137461, at *8 (C.D. Cal. Jan. 17, 2012) (holding that because plaintiff had stated a valid claim for false imprisonment, he also stated a valid claim for NIED).

Therefore, Plaintiff has sufficiently alleged a NIED claim against Defendant Officers.

### 5. *Violations of the Tom Bane Civil Rights Act—California Civil Code § 52.1*

In Claim VII, Plaintiff alleges that Defendant Officers and Garcia interfered with his right to be free from unreasonable seizure under the Fourth Amendment by using threats, intimidation, and coercion in violation of the Tom Bane Civil Rights Act, codified in California Civil Code § 52.1. Compl. ¶¶ 77–80.

The Bane Act provides a private cause of action for "[a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of [California], has been interfered with" through "threat[s], intimidation, or coercion." Cal. Civ. Code § 52(b)–(c). "The elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the added requirement that the government official had a 'specific intent to violate' a constitutional right." *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022) (quoting *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018)). There are two elements to plead a Bane Act claim. First, "there must be a 'threat, intimidation, or coercion,' although that element need not be 'transactionally independent' from the underlying constitutional violation alleged." *Smith v. City of Marina*, 709 F. Supp. 3d 926, 938 (N.D. Cal. 2024) (quoting *Reese*, 888 F.3d at 1043). Second, the plaintiff must demonstrate that the defendant had a "specific intent" to commit the constitutional violation. *Reese*, 888 F.3d at 1043.

To show specific intent, the right at issue must be "clearly delineated and plainly applicable under the circumstances of the case," and the defendant must have committed the act in question with the particular purpose of depriving the plaintiff of his enjoyment of that right. *Cornell*, 17 Cal. App. 5th at 803. The intent requirement is satisfied where the defendant allegedly acted with "[r]eckless disregard of the right at issue." *Estate of Serna v. Cnty. of San Diego*, No. 20-cv-2096-LAB-MSB, 2022 WL 827123, at *8 (S.D. Cal. Mar. 18, 2022) (quoting *Cornell*, 17 Cal. App. 5th at 804).

Here, as discussed above, Plaintiff has sufficiently pled false arrest claims against Defendant Officers and Garcia. In his false arrest claim, Plaintiff alleges that Defendant Officers "demonstrated a reckless disregard for the truth" when they failed to investigate exculpatory evidence. Compl. ¶ 42. "At the motion to dismiss stage . . . allegations of conduct that violates constitutional rights coupled with allegations that the conduct was done with reckless disregard for a party's rights can be sufficient to establish specific intent." *City of Marina*, 709 F. Supp. 3d at 939. Further, Plaintiff alleges that Garcia

intentionally made a false report to cause an interference with Plaintiff's liberty. Compl. ¶ 79. Therefore, Plaintiff has sufficiently stated a Bane Act claim against Defendant Officers and Garcia.

### D. Doe Defendants

Plaintiff names as Defendants: John Doe 1, John Doe 2, Jane Doe 1, and Jane Doe 2. "Courts especially disfavor 'Doe' pleading in an IFP case because, in the event the plaintiff's complaint alleges a plausible claim for relief, it is effectively impossible for the United States Marshal or deputy marshal to fulfill his or her duty to serve an unnamed defendant." *Pressley v. San Diego EMT Staff*, No. 24-CV-1940 JLS (MMP), 2025 WL 1642436, at *4 (S.D. Cal. June 9, 2025) (first citing Fed. R. Civ. P. 4(c)(3); then citing 28 U.S.C. § 1915(d)). A plaintiff still may refer to unknown defendants as "Doe" defendants, however "he must allege specific facts showing how each particular doe defendant violated his rights." *Id.* (citing *Cuda v. Employees/Contractors/Agents at or OCCC*, No. 19-00084 DKW-KJM, 2019 WL 2062945, at *4 (D. Haw. May 9, 2019)).

Regarding John Doe 1, John Doe 2, and Jane Doe 1, Plaintiff fails to link any violation of his rights to their conduct. Plaintiff alleges that John Doe 1 is a National City maintenance worker who was present at Plaintiff's arrest and that Jane Doe 1 is a plain clothes police officer who arrived after Plaintiff was arrested and placed in the police vehicle. Compl. ¶¶ 23–24. Plaintiff's only allegation towards John Doe 1 and Jane Doe 1 is that he told them about potential exculpatory evidence after his arrest, and they ignored him. *Id.* Further, Plaintiff alleges that John Doe 2, an internal affair detective for National City police, told Plaintiff "that he was aware of Plaintiff's arrest and that the officers followed their training." *Id.* ¶ 91. None of these allegations are sufficient to allege a violation of Plaintiff's rights. Regarding Jane Doe 2, as discussed above, Plaintiff has failed to state a claim for IIED against Jane Doe 2.

Therefore, the Doe Defendants are dismissed. Plaintiff may amend his Complaint to allege specific conduct violating his rights by these Defendants.

/ / /

## CONCLUSION

In light of the foregoing, the Court:

1. **GRANTS** Plaintiff's IFP Application (ECF No. 2);

2. **DISMISSES** Claim I, malicious prosecution, against Garcia **WITHOUT LEAVE TO AMEND**;

3. **DISMISSES** Claim V, intentional infliction of emotional distress, against Jane Doe 2 **WITH LEAVE TO AMEND**;

4. **DISMISSES** Claim IX, § 1983 Monell Claim, against the City of National City **WITH LEAVE TO AMEND**;

5. **DISMISSES** John Doe 1, John Doe 2, Jane Doe 1, Jane Doe 2, and the City of National City **WITHOUT PREJUDICE**;

6. **DIRECTS** the Clerk of the Court to issue summonses as to Plaintiff's Complaint (ECF No. 1) upon Defendants Kaitlynn Norie, Sadiq Al-Mosawi, Reynaldo Velazquez, Marc Vargas, Rowdy Pauu, and Olegario Garcia, and forward them to Plaintiff along with blank U.S. Marshal Forms 285 ("USM Forms 285").  In addition, the Clerk **SHALL PROVIDE** Plaintiff with certified copies of this Order, a certified copy of his Complaint, and the summonses so that he may serve Defendants.  Upon receipt of this "IFP Package," Plaintiff must complete the USM Forms 285 as completely and accurately as possible; include an address where Defendants may be served, *see* S.D. Cal. CivLR 4.1.c; and return them to the U.S. Marshal according to the instructions the Clerk of the Court provides in the letter accompanying his IFP Package;

7. **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon Defendants Kaitlynn Norie, Sadiq Al-Mosawi, Reynaldo Velazquez, Marc Vargas, Rowdy Pauu, and Olegario Garcia as directed by Plaintiff on the USM Forms 285 provided, and to file executed waivers of personal service upon Defendants with the Clerk of the Court as soon as possible after their

return.  Should any Defendant fail to return the U.S. Marshal's request for waiver of personal service within 90 days, the U.S. Marshal shall instead file the completed USM Form 285 Process Receipt and Return with the Clerk of the Court; include the date the summons, Complaint, and request for waiver were mailed to that Defendant; and indicate why service upon the party remains unexecuted.  All costs of said service will be advanced by the United States; however, if a Defendant located within the United States fails, without good cause, to sign and return the waiver requested by the U.S. Marshal on Plaintiff's behalf, the Court will impose upon the Defendant any expenses later incurred in making personal service.  *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3);

8.  **ORDERS** Defendants, once they have been served, to respond to Plaintiff's Complaint, and any subsequent pleading he may file in this matter in which they are named as parties, within the time provided by the applicable provisions of Federal Rules of Civil Procedure 12(a) and 15(a)(3); and

9.  **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants—or, if appearances have been entered by counsel, upon Defendants' counsel—a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Federal Rule of Civil Procedure 5(b).  Plaintiff must include with every original document he seeks to file with the Clerk of the Court a certificate stating the manner in which a true and correct copy of that document was served on Defendants or their counsel and the date of that service.  *See* S.D. Cal. CivLR 5.2.  Any document received by the Court that has not been properly filed with the Clerk of the Court, or that fails to include a certificate of service upon Defendants, may be disregarded.

**IT IS SO ORDERED.**

Dated:  November 17, 2025

Hon. Janis L. Sammartino
United States District Judge

25-CV-2172 JLS (KSC)