UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELOY MASCORRO,<br><br>                                    Plaintiff,<br><br>v.<br><br>THE CITY OF NATIONAL CITY, OLEGARIO GARCIA, KAITLYNN NORIE, SADIQ AL-MOSAWI, REYNALDO VELAZQUEZ, MARC VARGAS, ROWDY PAUU, JANE DOES 1–2, and JOHN DOES 1–2,<br><br>                                    Defendants. | Case No.:  25-CV-2172 JLS (GC)<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO FILE SUPPLEMENTAL PLEADINGS,**<br><br>**(2) GRANTING MOTION FOR EXTENSION OF TIME TO FILE FIRST AMENDED AND SUPPLEMENTAL COMPLAINT,**<br><br>**(3) DENYING AS MOOT MOTION TO COMPEL COMPLIANCE, AND**<br><br>**(4) SCREENING COMPLAINT**<br><br>(ECF Nos. 13, 14, 16) |

Presently before the Court are Plaintiff Eloy Mascorro's First Amended Complaint ("FAC," ECF No. 13-1), Motion to File Supplemental Pleadings ("Supp. Mot.," ECF No. 13), Motion for Extension of Time to File First Amended and Supplemental Complaint (ECF No. 14), and Motion to Compel Compliance (ECF No. 16).  Having carefully considered Plaintiff's Amended Complaint and the applicable law, the Court **GRANTS**

1

Plaintiff's Motion to File Supplemental Pleadings (ECF No. 13), **GRANTS** Plaintiff's Motion for Extension of Time to File First Amended and Supplemental Complaint (ECF No. 14), and **DENIES AS MOOT** Plaintiff's Motion to Compel Compliance (ECF No. 16).

## MOTIONS

The Court finds that good cause exists to allow Plaintiff an extension of time to file his First Amended Complaint. Therefore, Plaintiff's Motion for an extension is **GRANTED** (ECF No. 14). Plaintiff also seeks to supplement his Complaint with additional factual allegations that arose after the filing of the initial Complaint. *See* Supp. Mot. at 2. The Court **GRANTS** Plaintiff's Motion to Supplement Pleadings (ECF No. 13), *see* Fed. R. Civ. Proc. 15(d), and construes the Amended Complaint attached to his Motion to Supplement Pleadings as the operative Complaint. *See* FAC. As the Court must now screen Plaintiff's FAC, Plaintiff's Motion to Compel Compliance (ECF No. 16) by the U.S. Marshals is **DENIED AS MOOT**.

### SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)

**I.    Legal Standard**

Because Plaintiff is proceeding *in forma pauperis* ("IFP"), his Amended Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2). *See, e.g.*, *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2002) (per curiam) (holding "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners"); *see also Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) ("[S]ection 1915(e) not only permits but requires a district court to dismiss an [IFP] complaint that fails to state a claim."), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc). Under this statute, the Court *sua sponte* must dismiss a complaint, or any portion of it, that is frivolous, malicious, fails to state a claim, or seeks damages from immune defendants. *See Lopez*, 203 F.3d at 1126–27. "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 907 n.1 (9th Cir. 2014) (citations omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility requires pleading facts supporting a claim for relief, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Iqbal*, 556 U.S. at 678–79; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Further, courts have a duty to construe a pro se litigant's pleadings liberally. *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). A district court should grant leave to amend if it appears "at all possible that the plaintiff can correct the defect." *Lopez*, 203 F.3d at 1130 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988)).

## II.    Plaintiff's Allegations

On January 15, 2026, Plaintiff filed his FAC alleging twenty-one causes of action pursuant to both Federal and California law. *See generally* FAC. Plaintiff alleges that Defendants, The City of National City ("National City"); Luz Quezada, National City police officer; Kaitlynn Norie, National City police officer; Sadiq Al-Mosawi, National City police officer; Reynaldo Velazquez, National City police officer; Marc Vargas, National City police officer; Raziel Quiroga, National City police officer; Rowdy Pauu, National City police officer; Olegario Garcia, National City maintenance worker; John Doe 1, unidentified plainclothes city maintenance supervisor; and Jane Doe 1, unidentified

EMT/Paramedic, violated his Fourth and First Amendment rights under 42 U.S.C. § 1983 and California state law. *Id.* at 2–3, 18. Under § 1983, Plaintiff alleges malicious prosecution, false arrest, unreasonable seizure, unreasonable force, unreasonable search, retaliation, failure to intervene, deliberate indifference to medical needs, and a Monell Claim. *See generally id.* Under California law, Plaintiff alleges false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, and violations of the Tom Bane Civil Rights Act (Cal. Civ Code § 52.1). *See generally id.*

Specifically, Plaintiff alleges that, on or around July 25, 2024, he was wrongfully accused and arrested for brandishing a knife towards Defendant Garcia. *Id.* ¶¶ 11–13. At approximately 8 a.m., Plaintiff alleges that he was repairing a flat tire on his bicycle when Garcia approached him and accused him of littering. *Id.* ¶ 11. Plaintiff informed Garcia that the debris was likely from a nearby maintenance worker, which Garcia investigated and concluded that Plaintiff was responsible. *Id.* Garcia approached Plaintiff "displaying a hostile demeanor" and accused Plaintiff again of littering. *Id.* Plaintiff alleges he was, "fearing for his safety and experiencing anxiety," and told Garcia to get away and retrieved "his legally possessed pepper spray." *Id.* Plaintiff alleges that he did not brandish a knife. *Id.* Garcia returned to his vehicle and yelled, "You ain't shit without your shit," at Plaintiff as he walked away. *Id.*

Plaintiff alleges his cell phone, which was mounted on the bicycle, recorded the interaction. *Id.* ¶¶ 11–14. Plaintiff photographed Garcia's "City vehicle" and recorded the scene to report the incident. *Id.* ¶ 11. Plaintiff then called a number noted on the city vehicle and was called back by a "supervisor," to whom he spoke to requesting to file an official complaint against Garcia and describing the confrontation. *Id.*

Around 8:20 a.m., Plaintiff alleges that Norie, Al-Mosawi, Velazquez, Vargas, and Pauu arrived at the scene in uniform. *Id.* ¶ 12. Plaintiff then alleges that each officer drew their firearm, pointed them at Plaintiff, and directed him to get off his bike, walk backwards, and raise his hands, with which Plaintiff complied. *Id.* Plaintiff then informed the officers that he only possessed a phone and a pocketknife. *Id.* Plaintiff further claims

25-CV-2172 JLS (GC)

he complied with the officers' instructions to lay on the ground on his stomach where he was handcuffed, "applying excessive force to his arms and causing severe pain to his shoulder." *Id.*

Plaintiff attempted to explain to the officers that he had a recording of the incident and that surveillance footage from the Chamber of Commerce would demonstrate that he only retrieved his pepper spray. *Id.* ¶¶ 12–14. Plaintiff alleges that the officers failed to review the recording and investigate exculpatory evidence. *Id.* Plaintiff alleges that Defendants Vargas and Velazquez intentionally falsified the police report upon returning to the station. *Id.* ¶ 14.

Plaintiff complained of shoulder pain and requested medical attention, which was not addressed for forty-five (45) minutes. *Id.* ¶ 15. Plaintiff alleges that Jane Doe 1, a medical assistant, examined Plaintiff and accused him of faking his injury and made a derogatory statement about homeless individuals. *Id.*

Plaintiff was booked at the San Diego Downtown Jail and was released ninety-six hours later with no charges filed. *Id.* ¶ 16. Plaintiff later returned to the National City Police Department to file an internal affairs complaint and retrieve seized property. *Id.* ¶ 17. Plaintiff alleges Defendant Quiroga maintained that the officers "follow[ed] their training" after hearing the complaint. *Id.* After filing the complaint, Plaintiff alleges he was thwarted from immediately retrieving property. *Id.* ¶ 18. Plaintiff claims he eventually received some items, but others were discarded or destroyed. *Id.* Plaintiff claims he sent many emails requesting an investigation and the return of seized property but was never responded to. *Id.* ¶ 19.

Plaintiff supplements his Complaint with a second incident on December 12, 2025. *Id.* ¶ 22. Plaintiff alleges he was riding his bicycle on the sidewalk when Defendant Vargas approached him in a police vehicle. *Id.* Plaintiff attempted to explain that he only rode on the sidewalk temporarily to avoid debris, but his explanations were dismissed by the officers. *Id.* Vargas and Defendant Quiroga, who arrived minutes later, performed a pat-down search. *Id.* Plaintiff alleges the officers removed a pocket-knife from his person,

25-CV-2172 JLS (GC)

which was put inside a pocket of his backpack once the search concluded. *Id.* ¶¶ 22–23.

Plaintiff now brings the present action requesting compensatory damages against all Defendants, punitive damages against Quezada, Norie, Al-Mosawi, Velazquez, Vargas, Quiroga, Pauu, Garcia, and Doe Defendants, and attorney's fees. *Id.* ¶ 18.

### III.    Analysis

First, the Court must address whether Plaintiff has stated a claim under 42 U.S.C. § 1983 for purposes of establishing federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

Plaintiff alleges ten potential causes of action under section 1983: malicious prosecution (Claim I), false arrest (Claim II), unreasonable force (Claim III), unreasonable search (Claim IV, V), unreasonable seizure (Claim VI, VII), retaliation (Claim VIII, XIX, XXI),  interference with right to record (Claim XVI), failure to intervene (Claim XVII), deliberate indifference to medical needs (Claim XVIII), and unconstitutional practices through a Monell Claim (Claim XX). *See generally* FAC.

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Conner*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted).  To state a claim under § 1983, a plaintiff must allege both that (1) the defendant was acting under color of state law at the time the complained of act was committed and (2) the defendant's conduct deprived the plaintiff of a right secured by the Constitution and laws of the United States. *Tsao v. Desert Palace*, 698 F.3d 1128, 1138 (9th Cir. 2012) (citing *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011)).

#### A.    Under Color of State Law

A defendant acts under color of state law when she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941).  A defendant may act under color of state law where her conduct "satisfies the state-action requirement of the Fourteenth Amendment," i.e., "the defendant's alleged infringement of the plaintiff's

25-CV-2172 JLS (GC)

federal rights is 'fairly attributable to the State.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). The Ninth Circuit has identified "three critical requirements that must be satisfied" for finding that a defendant has acted under color of state law: (1) the defendant pretended or purported to act in the performance of her official duties, (2) "with the purpose and effect of influencing the behavior of others," and (3) the challenged conduct must be related in some meaningful way to the officer's government status or performance of her duties. *Anderson v. Warner*, 451 F.3d 1063, 1068–69 (9th Cir. 2006) (first citing *McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000); then citing *Martinez v. Colon*, 54 F.3d 980, 987 (1st Cir. 1995)).

For purposes of Section 1983, a police officer acts under color of state law if she is clothed with authority of the state and is purporting to act under that authority. *See Atkins*, 487 U.S. at 49–50 ("[A] public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."). Therefore, Quezada, Norie, Al-Mosawi, Velazquez, Vargas, Quiroga, and Pauu were acting under color of law through all the events alleged, as they were on-duty police officers engaged in their official duties.

However, whether Garcia, a city maintenance worker, was acting under color of state law for allegedly falsely reporting Plaintiff requires further analysis. Plaintiff alleges that Garcia was acting in "a matter related to [his] public maintenance duties" and that he "utilized his apparent authority as a government employee" when first confronting Plaintiff and when reporting Plaintiff to law enforcement. *See* FAC ¶ 11. While Garcia was on duty, not every action taken by a public officer on duty is taken under color of state law. *See, e.g.*, *Savarese v. City of New York*, 547 F. Supp. 3d 305, 337 (S.D.N.Y. 2021) (finding that an on-duty traffic agent was not acting under color of state law when he reported a crime of which he was the alleged victim); *Cruz v. Donnelly*, 727 F.2d 79, 80 (3rd Cir. 1984) (finding that merely calling the police and assisting them in investigating a crime does not constitute acting under the color of law). Acts of a public officer in furtherance

25-CV-2172 JLS (GC)

of "personal pursuits" are plainly excluded from the definition of under color of state law. *Screws v. United States*, 325 U.S. 91, 111 (1945).

At the screening stage, the Court finds that Plaintiff has sufficiently alleged that Garcia was acting under color of state law when making the phone call at issue. Plaintiff alleges that Garcia was "wearing a City uniform" and was "operating a city vehicle." FAC ¶ 11. Here, while unclear what Garcia's role was as a city maintenance employee, Garcia may have been acting in furtherance of his duties by attempting to prevent littering. The Court notes that it is unclear whether Garcia made the allegedly false phone call as a part of his official duties or because he felt personally victimized. *See, e.g.*, *Muhammad v. Jenkins*, No. CV 19-7970-JAK (PVC), 2022 WL 363004, at * 10 (C.D. Cal. Jan. 14, 2022) (denying summary judgment as to whether the defendant city bus driver acted under color of state law because she could have called 911 either in her official capacity to protect the passengers or "purely in her self-interest"). At a later stage, with more facts, the Court may find that "[i]n reporting to the police what [Garcia] saw and experienced, he was not invoking any authority granted to him as a [public employee] but exercising the rights he had as a civilian." *Savarese*, 547 F. Supp. 3d at 339. At this stage, the Court finds that Plaintiff has sufficiently pled that Garcia was acting under color of state law.

Therefore, Plaintiff has sufficiently alleged that Quezada, Norie, Al-Mosawi, Velazquez, Vargas, Quiroga, Pauu, and Garcia were acting under color of state law for purposes of a Section 1983 claim.

**B.    *Deprivation of a Right Secured by the Constitution or Laws of the United States***

Under Section 1983, a defendant deprives another of a constitutional right if the defendant "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant

25-CV-2172 JLS (GC)

whose acts or omissions are alleged to have caused a constitutional deprivation." *Id.*

For an individual defendant to be liable under Section 1983 there must be a showing of personal participation in the rights deprivation. *See Smith v. City of Marina*, 709 F. Supp. 3d 926, 934 (N.D. Cal. 2024) (dismissing and granting leave to amend to clarify which defendants were responsible for which conduct). There is no "team effort" standard which allows a plaintiff to lump all the defendants together rather than base liability on each defendant's actions. *See Hopkins v. Bonvicino*, 573 F.3d 752, 770–71 (9th Cir. 2009) (citing *Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996)). Under the "integral participant" rule, liability can be extended to those actors who were "integral participants in the constitutional violation, even if they did not directly engage in the unconstitutional conduct themselves." *Id.* For the remainder of this Order, unless otherwise specified, the Court finds that Plaintiff has sufficiently alleged Defendants are integral participants whenever a subheading encompasses multiple Defendants. *See Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022) (holding the integral participant satisfied where "the defendant knows about and acquiesces in the constitutionally defective conduct as part of a common plan with those whose conduct constitutes the violation"); *see Lacroix v. Howard*, No. 22-CV-1956-WQH-BLM, 2023 WL 6120613, at 2–3 (S.D. Cal. Sept. 18, 2023) (finding that plaintiff's allegations survived the "low threshold for screening" using the integral participant rule).

## C. Federal Claims

### 1. Claim I: 42 U.S.C. § 1983 Malicious Prosecution

The Court previously dismissed Plaintiff's malicious prosecution claim as to Garcia without leave to amend. *See* ECF No. 4 at 25. The Court found that because no charges were filed, Plaintiff cannot bring a malicious prosecution claim. *Id.*; *see Correa v. Whittier City Police Dep't*, No. 22-CV-00581-VBF (MAA), 2023 WL 4409118, at *6 (C.D. Cal. March 14, 2023) (dismissing malicious prosecution claim without leave to amend where no charges were filed). Therefore, Plaintiff's malicious prosecution claim against Garcia,

25-CV-2172 JLS (GC)

Norie, Al-Mosawi, Velazquez, Vargas, Pauu, Quezada, and John Doe 1 is **DISMISSED WITHOUT LEAVE TO AMEND**.

>        2.        *Claim II: 42 U.S.C. § 1983 False Arrest and Unreasonable Seizure*

In Claim II, Plaintiff alleges that Quezada, Norie, Al-Mosawi, Velazquez, Vargas, Pauu, and Garcia violated his Fourth Amendment right to be free from unreasonable seizure by arresting and detaining him without probable cause.  *See* FAC ¶¶ 40–54. Plaintiff alleges that Quezada, Norie, Al-Mosawi, Velazquez, Vargas, Pauu (the "Arresting Officers") failed to reasonably investigate the absence of probable cause because they failed to review Plaintiff's exculpatory evidence.  *Id.* ¶ 44.

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City and Cnty. of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001); *see, e.g.*, *Cabrera v. City of Huntington Beach*, 159 F.3d 374, 380 (9th Cir. 1998) (citing *George v. City of Long Beach*, 973 F.2d 706, 710 (9th Cir. 1992)) (stating that where an officer has probable cause to arrest, she cannot be liable for false arrest).  Probable cause exists when "there is a fair probability or substantial chance of criminal activity." *United States v. Patayan Soriano*, 361 F.3d 494, 505 (9th Cir. 2004) (quoting *United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001)).  "It is well-settled that 'the determination of probable cause is based upon the totality of the circumstances known to the officers at the time of the search.'"  *Id.* (quoting *Bishop*, 264 F.3d at 924).  "While an officer may not ignore exculpatory evidence that would negate a finding of probable cause, '[o]nce probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused.'"  *Tsao*, 698 F.3d at 1147 (quoting *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003)).

In the Ninth Circuit, "[i]n establishing probable cause, officers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) (citing *Fuller v.*

25-CV-2172 JLS (GC)

*M.G. Jewelry*, 950 F.2d 1437, 1444 (9th Cir. 1991)); *see also Hopkins*, 573 F.3d at 767 ("[S]tatements from a witness, without further investigation by the police, are insufficient to support probable cause."). While officers can rely upon information from a witness to establish reasonable suspicion for a *Terry* stop, they cannot establish probable cause solely on witness information. *See Thomas v. City of Portland*, No. 05-1059-ST, 2007 WL 2286254, at *11 (D. Or. Aug. 3, 2007) (first citing *Adams v. Williams*, 407 U.S. 143, 147 (1972); then citing *Fuller*, 950 F.2d at 1444); *see also Smith v. City of the Dalles*, No. 16-CV-1771-SI, 2021 WL 2287421, at *16–19 (D. Or. June 4, 2021) (finding reasonable suspicion for a *Terry* stop, but not probable cause to arrest because the officer had *only* the uncorroborated citizen witness 911 testimony, did not question plaintiff beyond a general denial, and did not interview the reporting witness or any other potential witnesses).

　　　　　　　　　　　a.　　Quezada, Norie, Al-Mosawi, Velazquez, Vargas, and Pauu

Here, Plaintiff alleges the Arresting Officers responded to a call that Plaintiff "pulled a knife," a potential violation of California Penal Code § 417.[1] FAC, Ex A. at 71. This report from an identified 911 caller, Garcia, corroborated by Plaintiff at the scene possessing a pocketknife, created reasonable suspicion to justify a *Terry* stop. *See, e.g.*, *Terry v. Ohio*, 392 U.S. 1 (1968); *United States v. Terry-Crespo*, 356 F.3d 1170, 1174–77 (9th Cir. 2004) (finding that a non-anonymous 911 call created reasonable suspicion, as the police could "place additional reliability" on a "victim-informant" who sought immediate police assistance); *United States v. Drake*, 456 F.3d 771, 775 (7th Cir. 2006) ("We therefore presume the reliability of an eyewitness 911 call reporting an emergency situation for purposes of establishing reasonable suspicion, particularly when the caller identifies herself . . . [and] provide[s] sufficient details to allow the officers to identify the suspects.").

---

[1] California Penal Code § 417(a)(1) makes it a misdemeanor to "draw[] or exhibit[] any deadly weapon whatsoever, other than a firearm, in a rude, angry, or threatening manner." Plaintiff's arrest report demonstrates he was arrested for this offense. Specifically, for being armed with a "[l]ethal [c]utting [i]nstrument." *See* FAC, Ex. A at 72.

25-CV-2172 JLS (GC)

However, the Arresting Officers needed probable cause to physically restrain Plaintiff with handcuffs—absent legitimate safety concerns for officers or an intention to evade arrest, neither of which are present here.[2] *See City of the Dalles*, 2021 WL 2287421, at \*8 (first citing *Washington v. Lambert*, 98 F.3d 1181, 1186 (9th Cir. 1996); then citing *United States v. Cervantes-Flores*, 421 F.3d 825, 830 (9th Cir. 2005), *overruled on other grounds by*, *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009)).

Plaintiff alleges that, upon arriving at the scene, the Arresting Officers, with their firearms drawn, approached Plaintiff and asked him to get off his bike, walk backwards towards them, and lay on the ground on his stomach. FAC ¶ 12. Plaintiff alleges he complied and informed them that "he only possessed a phone in his hand and a pocket knife in his pocket," that they had received a false report, and that the incident was recorded on his phone and from surveillance footage from the Chamber of Commerce. *Id.* Taking Plaintiff's allegations as true, at no point did the Arresting Officers investigate any of Garcia's allegations. They did not review the video footage—whether Plaintiff's own or any surrounding surveillance footage from the Chamber of Commerce—nor did they make any efforts to "independently investigate the basis of the witness' knowledge or interview other witnesses." *Arpin*, 261 F.3d at 925 (citing *Fuller*, 950 F.2d at 1444); *City of the Dalles*, 2021 WL 2287421, at \*16–19; *see also Hopkins*, 573 F.3d at 767 (finding that officers did not have probable cause when they obtained no information beyond the witness's report); *Vuz v. DCSS III, Inc.*, 20-CV-246-GPC-AGS, 2020 WL 4366023, at \*11

---

[2] To distinguish between a *Terry* stop and an arrest, courts "consider whether a reasonable person would believe that he or she is being subjected to more than a temporary detention, as well as the justification for the use of such tactics, i.e., whether the officer had sufficient basis to fear for his safety to warrant the intrusiveness of the action taken." *United States v. Brown*, 996 F.3d 998, 1006 (9th Cir. 2021) (internal citations omitted). "When considering the safety concerns of the officers, [courts analyze] 'the severity of the crime at issue' and 'whether the suspect poses an immediate threat to the safety of the officers or others.'" *City of the Dalles*, 2021 WL 2287421, at \*8 (quoting *Green v. City & Cnty. of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014)). Here, taking Plaintiff's allegations as true, Plaintiff complied with all the Arresting Officer's requests and did not pose a threat to their safety. Plaintiff was handcuffed and placed on the ground on his stomach by the Arresting Officers, whose firearms were drawn. This is sufficient to allege that the stop had turned into an arrest, as Plaintiff reasonably did not feel free to leave and could not physically leave.

25-CV-2172 JLS (GC)

(S.D. Cal. July 30, 2020) (surviving a motion to dismiss by alleging that officers only interviewed the reporting witnesses and no other witnesses).  At this stage, the Court concludes that the Arresting Officers still had an obligation to investigate exculpatory evidence as probable cause had not been established.  *See Tsao*, 698 F.3d at 1147.

Therefore, Plaintiff has sufficiently alleged a false arrest claim against Quezada, Norie, Al-Mosawi, Velazquez, Vargas, and Pauu.

b.      Garcia

To allege a Fourth Amendment violation by a non-law enforcement governmental party, Plaintiff must demonstrate that Garcia acted "with the intent to assist the government in its investigatory or administrative purposes, and not for an independent purpose." *Arpin*, 261 F.3d at 924 (internal quotation marks omitted) (quoting *United States v. Attson*, 900 F.2d 1427, 1429 (9th Cir. 1990)).  If Plaintiff can demonstrate that Garcia's conduct is subject to the Fourth Amendment, Garcia violated Plaintiff's rights if, "under the circumstances apparent at the time," Garcia "unreasonably caused the restriction of [Plaintiff's] liberty." *See id.*  Here, Plaintiff alleges that Garcia was a city maintenance worker who approached Plaintiff and falsely accused him of littering.  FAC ¶ 43.  After a hostile interaction, Plaintiff felt threatened and pulled out his pepper spray.  *Id.* ¶ 42. Plaintiff reported Garcia to his supervisors; then Garcia reported Plaintiff to the police.  *Id.* ¶ 43.  From these facts, it could be plausibly inferred that Garcia called the police not for an independent purpose, but as a governmental employee acting with the intent to assist National City in preventing littering.  *See Arpin*, 261 F.3d at 924.  It is plausible that Garcia reported the incident to the police maliciously to provide a means where the police would take him into custody—potentially violating Plaintiff's Fourth Amendment right.  *See id.* Therefore, at the screening stage, Plaintiff alleged sufficient facts that Garcia was acting on behalf of National City and subjected Plaintiff to an unreasonable seizure.

Accordingly, Plaintiff sufficiently stated a claim for false arrest and unreasonable seizure under § 1983 against Garcia.

/ / /

13

### 3.    Claim III: 42 U.S.C. § 1983 Unreasonable Force Under the Fourth Amendment

In Claim III, Plaintiff alleges that Norie, Al-Mosawi, Velazquez, Vargas, and Pauu used "objectively unreasonable and excessive force" when they handcuffed him "while he was lying prone, forcefully and unnecessarily yanking his arms behind his back."  FAC ¶¶ 57–59.  Plaintiff claims he complied with all orders, displayed no weapon, and offered no resistance.  *Id.*  Plaintiff allegedly experienced severe pain in his shoulder from a rotator cuff injury.  *Id.* ¶ 59.

Under the Fourth Amendment, the amount of force used in a seizure or arrest must be "objectively reasonable" under the circumstances.  *Graham*, 490 U.S. at 397.  The Ninth Circuit employs a three-step analysis for evaluating reasonableness under *Graham*.  *See Harmon v. City of Pocatello*, 854 Fed. App'x 850, 853 (9th Cir. 2021).  First, the Court must assess "the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force inflicted."  *Id.* (citing *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003)).  Second, the Court assesses the "importance of the government interests at stake" by considering: "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight."  *Id.*  Third, the Court must balance the gravity of the intrusion on the person against the government's interests at stake.  *Id.*

Here, Plaintiff states that from a distance of "30-40 feet" Norie, Al-Mosawi, Velazquez, Vargas, and Pauu drew their firearms and pointed them at Plaintiff.  FAC ¶ 57.  Plaintiff further claims that while he was lying on the ground, Norie, Al-Mosawi, Velazquez, Vargas, Quiroga, and Pauu approached him with their guns drawn and forcefully "yanked" his arms behind his back and handcuffed him.  *Id.* ¶ 59.  Regarding the gravity of the intrusion, the Ninth Circuit has found that pointing a gun at someone may constitute excessive force, even if it does not cause injury.  *See Tekle v. United States*, 511 F.3d 839, 845 (9th Cir. 2007) (citing *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1014–15

25-CV-2172 JLS (GC)

(9th Cir. 2002) (en banc)).  Further, officers being unnecessarily rough and causing unreasonable harm while handcuffing a suspect can be sufficient for an unreasonable force claim under the Fourth Amendment.  *See Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989); *see also Bryan v. MacPherson*, 630 F.3d 805, 828–29 (9th Cir. 2010) (citing *Headwaters Forest Def. v. Cnty. of Humboldt*, 240 F.3d 1185, 1204 (9th Cir. 2000), *vacated and remanded on other grounds*, 534 U.S. 801 (2001)) ("While the commission of a misdemeanor offense is not to be taken lightly, it militates against finding the force used to effect an arrest reasonable where the suspect was also nonviolent and posed no threat to the safety of the officers or others." (internal quotation marks omitted)).

Plaintiff was suspected of violating California Penal Code § 417, a misdemeanor. FAC, Ex. A at 21.  While Plaintiff was accused of threatening Garcia with a knife and reported to Norie, Al-Mosawi, Velazquez, Vargas, and Pauu that he did have a knife, based on Plaintiff's allegations, he complied with all the officers' requests, did not attempt to resist arrest, and was not a threat to the officers.  *Id.* ¶¶ 57–59.  "The most important *Graham* factor is whether the suspect posed an immediate threat to anyone's safety." *Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019) (citing *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc)).  Taking Plaintiff's account of the events as true, Plaintiff did not pose a threat to the officers.  Plaintiff has sufficiently stated a claim that Norie, Al-Mosawi, Velazquez, Vargas, and Pauu alleged extended use of firearms and forceful pulling on Plaintiff's arm to restrain him was not objectively reasonable under the circumstances.

Therefore, Plaintiff has sufficiently alleged excessive force against Norie, Al-Mosawi, Velazquez, Vargas, and Pauu.

> 4.  *Claims IV and V: 42 U.S.C. § 1983 Unreasonable Search Under the Fourth Amendment*

In Claim IV, Plaintiff alleges that on December 12, 2025, Vargas and Quiroga violated his Fourth Amendment rights by performing a search of his person without Plaintiff posing any threat.  FAC ¶¶ 63–65.  Additionally, in Claim V Plaintiff alleges

15

25-CV-2172 JLS (GC)

Vargas and Quiroga searched his backpack without consent after Plaintiff was handcuffed. *Id.* ¶¶ 67–68.

The Fourth Amendment requires that all searches and seizures be reasonable. *Graves v. City of Coeur D'Alene*, 339 F.3d 828, 841 (9th Cir. 2003), *abrogated on other grounds by OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1016 (9th Cir. 2018). In ordinary cases, for a search to be reasonable, the search must be supported by probable cause. *Id.*; *see also Carroll v. United States*, 267 U.S. 132, 149 (1925) (holding that "the true rule is that if the search and seizure without a warrant are made upon probable cause . . . the search and seizure are valid"). Probable cause exists when an officer's reasonably learned information would be sufficient for a prudent person to believe that an offense occurred. *Graves*, 339 F.3d 841; *see Brinegar v. United States*, 338 U.S. 160, 175–76 (1949). A stop-and-frisk under *Terry* constitutes two independent actions, each requiring separate justifications. *United States v. Thomas*, 863 F.2d 622, 628 (9th Cir. 1988). The stop must be based on a suspicion of criminal activity and the frisk on a reasonable suspicion that the person is armed. *Id.* However, during a lawful stop, an officer may pat down a detained individual if the officer has a reasonable suspicion that the individual "may be armed and presently dangerous." *United States v. Orman*, 486 F.3d 1170, 1173 (9th Cir. 2007) (citing *Terry*, 392 U.S. at 30). Importantly, the reasonable suspicion can be based on the detained individual admitting they have a weapon. *Id.* at 1176. Further, a search involves the government physically occupying private property for the purpose of obtaining information. *United States v. Dixon*, 984 F.3d 814, 816 (9th Cir. 2020) (citing *United States v. Jones*, 565 U.S. 400, 404 (2012)). Government conduct that does not have an investigative purpose is not a search under the Fourth Amendment. *See Attson*, 900 F.2d at 1431.

Here, Plaintiff alleges he was riding his bicycle on the sidewalk when Vargas turned on his emergency lights and approached him. FAC ¶ 22. Vargas explained that riding on the sidewalk was an infraction and did not seriously consider Plaintiff's excuse of avoiding debris. *Id.* Plaintiff alleges that Quiroga arrived after approximately three minutes. *Id.*

16

Plaintiff claims that after revealing that he possessed a legal pocket-knife, the officers took Plaintiff's bicycle, placed him in handcuffs, performed a pat down search, and took the knife. *Id.* Further, Plaintiff alleges that the officers opened his backpack to place his knife into it as they conducted their search. *Id.* ¶ 67.

Taking Plaintiff's allegations as true, there does not appear to be any constitutional violations. According to Plaintiff, the officer made a stop for a minor infraction. FAC ¶ 22. Plaintiff admits to the conduct alleged as the reason for the stop, which would satisfy the first prong of the *Terry* stop: suspicion of criminal activity. *See id.* Vargas and Quiroga reasonably believed Plaintiff had a weapon because Plaintiff admitted to having a knife, just as the officer in *Orman* reasonably believed there was a weapon after the detainee admitted to having one. *Id.* The officer then conducted a pat down to "neutralize the threat of physical harm." *Terry*, 392 U.S. at 23–24; FAC ¶ 22. Further, there was no unreasonable search when the officer placed the knife into Plaintiff's backpack because there was no investigative or information gathering purpose. *Id.*; *see Dixon*, 984 F.3d at 816.

Therefore, Claims IV and V for unreasonable search against Vargas and Quiroga is **DISMISSED WITH LEAVE TO AMEND**.

5.    *Claims VI and VII: 42 U.S.C. § 1983 Unreasonable Seizure Under the Fourth Amendment*

In Claims VI and VII, Plaintiff alleges that Vargas and Quiroga violated his Fourth Amendment rights by taking possession of his bicycle and handcuffing him during the December 12, 2025, stop. FAC ¶¶ 69–76.

a.    Claim VI against Vargas and Quiroga: Seizure of Bicycle

Under the Fourth Amendment, police officers may temporarily detain individuals during a traffic stop, which constitutes a "seizure" of persons, and may handle property "only as long as is reasonably necessary" to complete the stop's mission, such as verifying a driver's license or inspecting vehicle registration. U.S. Const. amend. IV; *United States v. Gorman*, 859 F.3d 706, 714 (2017). Officers may not prolong the stop beyond its

original purpose unless they have "independent reasonable suspicion" of criminal activity. *Gorman*, 859 F.3d at 714. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. England*, 971 F.2d 419, 420 (1992) (quoting *United States v. Jacobsen,* 466 U.S. 109, 113, (1984)). To assess the reasonableness of a seizure, "[courts] must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Jacobsen*, 466 U.S. at 125 (internal citations omitted). Brief handling or movement of property that does not materially interfere with the owner's possessory interest or expectations is generally not considered a seizure. *United States v. Brown*, 884 F.2d 1309, 1311 (1989) (finding detaining luggage was not a seizure because the detention would not have affected the defendants travel, was temporary, and did not burden the owner).

In this case, Plaintiff alleges that Vargas and Quiroga took possession of his bicycle and leaned it against a nearby pole. FAC ¶¶ 22, 70–71. Plaintiff alleges that he was stopped for riding his bicycle on the sidewalk. *Id.* at 22. As described, this does not amount to an unreasonable seizure. The officer's handling of the bicycle is directly analogous to the brief handling of luggage in *Brown*. *Brown*, 884 F.2d at 1311. In *Brown*, the temporary movement and detention of the defendant's bags did not rise to the level of a constitutional seizure because it did not materially disrupt the owner's possessory interests. *Id.* Similarly, taking the bicycle and resting it against a pole was a de minimis physical shift in the property's placement. The movement of the bicycle here was extremely short in both physical distance and temporal duration and did not uniquely burden Plaintiff. It did not add significantly to the length of the stop, nor did it inconvenience Plaintiff beyond the inherent inconvenience of the stop itself. While the government's interest in moving the bicycle was not necessarily urgent nor strictly investigative, the corresponding nature and quality of the intrusion on Plaintiff's property rights were so minor that no meaningful interference occurred.

/ / /

25-CV-2172 JLS (GC)

Thus, Claim VI for unreasonable seizure under the Fourth Amendment against Vargas and Quiroga is **DISMISSED WITH LEAVE TO AMEND**.

     b.  Claim VII against Vargas and Quiroga: Handcuffing

For a person to be "seized" within the meaning of the Fourth Amendment a reasonable person would have to believe that they were not free to leave after considering all the circumstances surrounding the incident. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Factors that suggest a seizure occurred are displays of weapons by officers, physical touching of the citizen, or tones that suggest the citizen must comply. *Id.* at 554–55. Regarding lawful stops, the objective of a *Terry* frisk is "to allow the officer to pursue his investigation without fear of violence." *Adams*, 407 U.S. at 146. Handcuffing a suspect does not automatically turn a lawful investigative stop into a de facto arrest. *United States v. Bautista*, 684 F.2d 1286, 1288–89 (9th Cir. 1982). However, handcuffing is significantly more intrusive and is not generally part of a *Terry* stop. *Id.* at 1289. Generally, handcuffing is permitted if suspects are potentially dangerous. *Id.* When determining whether more intrusive methods of stopping an individual are acceptable, courts look at the totality of the circumstances. In particular:

> 1) where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight; 2) where the police have information that the suspect is currently armed; 3) where the stop closely follows a violent crime; and 4) where the police have information that a crime that may involve violence is about to occur.

*Lambert*, 98 F.3d at 1189.

Plaintiff alleges he was fully cooperative, the stop was for a non-violent infraction, and he was not a flight risk, as evidenced by the fact he had already stopped his bicycle. FAC ¶ 74. Plaintiff did admit to being armed with a knife. *Id.* ¶ 63. Taking these allegations as true and comparing them to the factors considered in *Lambert*, Plaintiff was cooperative and took no actions indicating that he was dangerous or would run. *Id.* ¶ 74. The stop was for riding a bicycle on a sidewalk, not a violent crime. *Id.* ¶ 74. There was

25-CV-2172 JLS (GC)

no evidence to reasonably infer that a crime of violence would occur soon. *Id.* While these facts could be sufficient to justify a pat down for officer safety, the aggravating factors are plausibly not sufficient to justify the more intrusive use of handcuffs during the investigative stop. *See Lambert*, 98 F.3d at 1189; *see also Orman*, 486 F.3d at 1173.

Therefore, Plaintiff has sufficiently alleged unreasonable seizure pursuant to Section 1983 against Vargas and Quiroga in Claim VII.

      6.     *Claim VIII and Claim XIX: 42 U.S.C. § 1983 Retaliation Under the First Amendment*

In Claim VIII, Plaintiff alleges that Vargas and Quiroga violated his First Amendment rights by detaining him in retaliation for his legal challenges against the police department. FAC ¶ 80. In addition, in Claim XIX, Plaintiff alleges that Garcia, Norie. Vargas, Al-Mosawi, Pauu, Quezada, Quiroga, John Doe 1, and National City violated his First Amendment rights by retaliating against him, upon learning about his intent to file a complaint about Garcia's conduct. FAC ¶¶ 155–161.

A plaintiff can bring a Section 1983 claim alleging that a public official "took action with the intent to retaliate against, obstruct, or chill the plaintiff's First Amendment rights." *Arizona Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (citing *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)). A plaintiff must allege that "(1) [she] engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *Id.* (citing *O'Brien v. Welty*, 818 F.3d 920, 933–34 (9th Cir. 2016)). To succeed, a plaintiff need only demonstrate the defendant "intended to interfere" with the plaintiff's First Amendment rights and the plaintiff suffered an injury as a result; a plaintiff is not required to prove that their speech was inhibited. *Id.* (citing *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999)).

/ / /

20

25-CV-2172 JLS (GC)

The Ninth Circuit has found that retaliatory police action like an arrest or search and seizure would "chill a person of ordinary firmness from engaging in future First Amendment activity." *Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013), *abrogated on other grounds by*, *Nieves v. Bartlett*, 587 U.S. 391 (2019) (finding that allegations of being booked and jailed in retaliation for one's speech is sufficient); *see also Bronner v. S.F. Superior Ct.*, No. C 09-5001 SI, 2010 WL 2650500, at *5 (N.D. Cal. July 1, 2010) (citing *Landrigan v. City of Warwick*, 628 F.2d 736, 744–45 (1st Cir. 1980)) (noting that a false police report can provide the basis for a § 1983 action if a constitutional harm flows from the report). Further, "the law is settled that . . . the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citing *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998)).

### a. Claim VIII Against Vargas and Quiroga

Plaintiff alleges that he was detained on December 12, 2025, for his protected speech of filing formal complaints against the police department, rather than for riding his bicycle on a sidewalk, as the officer claimed. FAC ¶ 78. To support this claim, Plaintiff alleges that Quiroga stated that Plaintiff "likes to complain about cops" during the stop. *Id.* Notably, Plaintiff previously alleged that Quiroga arrived three minutes after he was initially detained. *Id.* ¶ 22. Further, Plaintiff claims Vargas stated he, from a distance of two blocks away, did not observe any road debris, which Plaintiff describes as a "scientifically impossible claim" to ignore Plaintiff's excuse regarding his conduct. *Id.* ¶ 79. Plaintiff alleges that his handcuffing was only utilized to intimidate him in retaliation for his complaints. *Id.* ¶ 79. Additionally, Plaintiff alleges that he was only questioned about potential weapons after Quiroga arrived. *Id.* ¶ 22. Plaintiff alleges that because of his detention and the severity of methods used, a person of ordinary firmness would have been chilled from exercising their First Amendment right to speak out against the police. *Id.* ¶ 82.

///

25-CV-2172 JLS (GC)

It is not immediately evident that the stop was initiated due to Plaintiff's previous complaints because Plaintiff has not alleged that Vargas, the officer who initiated the stop, was aware of Plaintiff's complaints prior to stopping Plaintiff.  However, Plaintiff has alleged that the intensity of the stop changed when Quiroga arrived.  In particular, Plaintiff was handcuffed, questioned about weapons, and pat down.  As noted in *Ford*, a person of reasonable firmness could be dissuaded from using their First Amendment rights by police searching, seizing, or arresting them.  *Ford*, 706 F.3d at 1193.  While the stop was not necessarily a de facto arrest, based on Plaintiff's alleged facts, it was more invasive than a typical *Terry* stop.  *See Bautista,* 684 F.2d at 1289.  Plaintiff has sufficiently alleged that the officers interfered with his First Amendment rights by escalating the stop with knowledge of the Plaintiff's prior conduct, and that the deterrence and chilling effect was intended.  *See Ariz. Students' Ass'n*, 824 F.3d at 867.

Therefore, Plaintiff has adequately pled Claim VIII for retaliation against Vargas and Quiroga.

b.      Claim XIX Against Garcia

In Claim XIX, Plaintiff alleges that Garcia violated his First Amendment rights by calling the police with false accusations in retaliation for Plaintiff calling Garcia's supervisors.  FAC ¶¶ 11, 158.  Plaintiff alleges that he called National City to file "an official misconduct complaint."  *Id.* ¶ 11.  Plaintiff alleges that after Garcia learned that Plaintiff intended to report him, Garcia "initiated a knowingly false report to law enforcement."  *Id.* ¶ 158.  Plaintiff alleges that his constitutionally protected report was the "but-for" cause of Garcia calling the police and that Garcia's police report would "chill or deter a person of 'ordinary firmness' from reporting employee misconduct."  *Id.* ¶ 157.  Plaintiff continues by alleging that the call resulted in him being arrested.  *Id.* ¶ 14.

First, because Plaintiff was reporting alleged government employee misconduct, Plaintiff has sufficiently alleged that he was engaged in constitutionally protected speech.  *See Thomas v. City of Beaverton*, 379 F.3d 802, 809 (9th Cir. 2004) ("Unlawful conduct by a government employee . . . is a matter of public concern."); *see also Eng v. Cooley*,

25-CV-2172 JLS (GC)

552 F.3d 1062, 1075 (9th Cir. 2009) (finding that speech by a citizen on matters of public concern was a clearly established First Amendment right).

Second, Plaintiff alleges that he was arrested based solely on Garcia's false report to the police, and this report was made due to his constitutionally protected report of Garcia's behavior to the city. Based on these allegations, Plaintiff has sufficiently alleged his arrest would chill a person of ordinary firmness from engaging in protected speech. *See Ford*, 706 F.3d at 1193.

Finally, Plaintiff alleges that his report to the city supervisors was a substantial or motivating factor in Garcia's decision to call the police because Garcia initiated his "false felony report" "upon learning of Plaintiff's intent to file a complaint." FAC ¶ 157. "[T]iming can properly be considered as circumstantial evidence of retaliatory intent." *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (citing *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989)); *see also Beck v. City of Upland*, 527 F.3d 853, 868 (9th Cir. 2008) ("[A plaintiff's] showing of a heated personal confrontation followed by a hasty arrest likewise could rationally support a finding of retaliatory animus."). "Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." *Watison*, 668 F.3d at 1114 (citing *Pratt*, 65 F.3d at 808)). Plaintiff must show that the adverse action would not have been taken absent the retaliatory motive. *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (citing *Hartman*, 547 U.S. at 259).

Here, Garcia and Plaintiff got into a heated argument evidenced by Garcia yelling, "You ain't shit without your shit." FAC ¶ 11. Plaintiff then noted the phone number of the city vehicle, which he quickly called. *Id.* Plaintiff spoke with a "supervisor" about the interaction, which Garcia allegedly overheard. *Id.* ¶¶ 11, 157. Quezada, Norie, Al-Mosawi, Velazquez, Vargas, Quiroga, and Pauu then arrived and arrested Plaintiff. *Id.* ¶ 12. It is plausible that Garcia's allegedly false report was motivated by Plaintiff's call to his supervisors, as he was within earshot. Therefore, Plaintiff has adequately stated a claim

25-CV-2172 JLS (GC)

that Garcia acted with an intent to chill. *See, e.g.*, *Toler v. Paulson*, 551 F. Supp. 2d 1039, 1048 (E.D. Cal. 2008) (stating a claim for First Amendment retaliation where plaintiff publicly criticized the District Attorney's Office, and a DA investigator subsequently filed a false petition for a TRO); *Johnson v. Erickson*, 20-CV-4168-KES, 2021 WL 201725, at *2 (D.S.D. Jan. 20, 2021) (stating a claim for First Amendment retaliation by alleging that a parole officer filed a false report leading to plaintiff's arrest because plaintiff told him about a lawsuit he was filing against the officer); *cf. Vermeulen v. Jenkins*, No. 13-CV-2007-LJO-BAM, 2014 WL 2154448, at *3 (E.D. Cal. May 22, 2014) (dismissing retaliation claim because plaintiff failed to allege that defendants had any knowledge of the alleged criticism causing retaliation).

As discussed above, Plaintiff has plausibly alleged that Garcia was acting in his role as a city employee when he made the phone call in question. Therefore, Plaintiff has adequately stated a claim for retaliation under Section 1983.

     c.  Claim XIX Against Norie, Vargas, Al-Mosawi, Pauu, and Quezada

Plaintiff alleges that Norie, Vargas, Al-Mosawi, Pauu, and Quezada "acted in concert with Garcia to effectuate" the retaliation. FAC ¶ 159. Plaintiff claims that by arresting him they became "necessary instruments" to effectuate the retaliation. *Id.*

To prevail, Plaintiff would need to show "a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Hill v. City of Fountain Valley*, 70 F.4th 507, 518 (9th Cir. 2023) (quoting *Nieves*, 587 U.S. at 398). Further, the "retaliatory animus" must be the "but-for" cause of Plaintiff's injury. *Id.* In other words, Plaintiff would have to show that he would not have been arrested if the police were not attempting to retaliate against him. *See id.*

Here, Plaintiff offers no allegations to support that the police officers had any retaliatory motivation. Plaintiff's allegations vaguely claim that the officers "believed" Garcia's call above Plaintiff's protests, but police officers are under no obligation to take a person they are arresting at their word. *See United States v. Ped*, 943 F.3d 427, 432 (9th

Cir. 2019) (finding that officers could proceed with a search warrant despite the suspects mother saying the suspect no longer lived there because the mother was a "less-than-disinterested" party and her statements were not convincing). In the absence of any evidence of police retaliation, Claim XIX Against Norie, Vargas, Al-Mosawi, Pauu, and Quezada is **DISMISSED WITH LEAVE TO AMEND**.

                           d.        Claim XIX Against the City of National City and Quiroga

Plaintiff alleges that National City and Quiroga "ratified" retaliation by maintaining the officers that arrested him on July 25, 2024, "followed training" after hearing about the incident. FAC ¶ 160. In addition, Plaintiff alleges that the city "blacklist[ing]" his email is a "separate and ongoing retaliatory act." *Id.*

Plaintiff has to show that both National City and Quiroga acted with intent to deter Plaintiff's use of free speech and that they acted with retaliatory intent. *See Ariz. Students' Ass'n*, 824 F.3d at 867; *see also Nunez v. City of Los Angeles*, 147 F.3d 867, 874 (9th Cir. 1998) (finding that a public official making defensive statements did not constitute retaliation because they had no material adverse effect on the plaintiff). Neither element is alleged here. Similarly to *Nunez*, Plaintiff did not allege any adverse effects from Quiroga's comment. Regarding the "blacklist[ing]" of Plaintiff's email, the Third Circuit held that the "mere fact of blocking alone, regardless of intent," cannot rise to the level of a constitutional violation. *Ferrone v. Onorato*, 298 F. App'x 190, 193 (3d Cir. 2008). This is consistent with *Arizona Students'* as Plaintiff was not prevented from using other channels to petition the government: Plaintiff could still attend public meetings, call city officers, or send physical mail. Given these other available methods, the "blacklist[ing]" would not have "chilled" a person of ordinary firmness from exercising their first amendment right to free speech.

Accordingly, Claim XIX Against the City of National City and Quiroga is **DISMISSED WITH LEAVE TO AMEND**.

/ / /

/ / /

25-CV-2172 JLS (GC)

e.      Claim XIX Against John Doe 1

Plaintiff alleges John Doe 1 was a city supervisor who conversed with the police following his July 25, 2024, arrest.  FAC ¶ 13.  Plaintiff alleges that John Doe 1 did not "review any exculpatory evidence."  *Id.*

These allegations are not enough such that a person of ordinary firmness would be chilled from exercising their first amendment rights.  *See Ford*, 706 F.3d at 1193. Accordingly, Claim XIX against John Doe 1 is **DISMISSED WITH LEAVE TO AMEND**.

7.      *Claim XVI: 42 U.S.C. § 1983 Interference with the Right to Record under the First Amendment*

California Penal Code Section 148(g) establishes that making an "audio or video recording" of an officer "while the officer is in a public place" or the person making the recording "is in a place he or she has the right to be" is not obstructing justice.  *Bernal v. Sacramento Cnty. Sheriff's Dep't*, 73 F.4th 678, 699 (9th Cir. 2023) (citing Cal. Penal Code § 148(g)).  Further, the Ninth Circuit has held that the First Amendment protects the right to film matters of public interest.  *Bernal*, 73 F.4th at 699 (citing *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995)).  To assert a claim under 42 U.S.C. § 1983 for interfering with the First Amendment right to record, a plaintiff in the Ninth Circuit must plausibly allege that a state actor interfered with the filming of a matter of public interest, such as public police activity.  *Fordyce*, 55 F.3d at 439.  Officers can be held liable under Section 1983 if they use force or other forms of interference "in an attempt to prevent or dissuade" an individual from exercising this constitutional right.  *Id.*

a.      Norie and Al-Mosawi

Plaintiff alleges that Norie and Al-Mosawi interfered with his constitutional right to record police activities.  FAC ¶ 133.  Specifically, Plaintiff alleges that the officers "intentionally seized and disabled Plaintiff's recording device" during his arrest on July 25, 2024.  *Id.*

Police can seize a phone incident to a defendant's arrest. *See Riley v. California*, 573 U.S. 373, 382–83 (2014). Here, Plaintiff was being arrested. FAC ¶ 12. Since the phone being seized was incident to Plaintiff's arrest, Plaintiff has failed to allege that Norie and Al-Mosawi have violated his constitutional rights. Accordingly, Claim XVI Against Norie and Al-Mosawi is **DISMISSED WITH LEAVE TO AMEND**.

> b.  Vargas and Quiroga

Plaintiff alleges "Vargas and Quiroga interfered with Plaintiff's First Amendment rights by initiating a . . . detention." FAC ¶ 134. Plaintiff does not allege that he was recording, or that Vargas and Quiroga interfered with any recording. *See generally* FAC. Since Plaintiff does not allege that a state actor interfered with the filming of a matter of public interest, he has failed to sufficiently allege a claim for interference with the right to record. *See Fordyce*, 55 F.3d at 439.

Therefore, Claim XVI Against Vargas and Quiroga is **DISMISSED WITH LEAVE TO AMEND**.

> c.  City of National City

Plaintiff alleges "National City . . . intentionally and digitally backlist[ed] Plaintiff's electronic communications." FAC ¶ 135. There are no allegations regarding filming or interference of any filming. *See generally* FAC. Since Plaintiff does not allege that a state actor interfered with the filming of a matter of public interest, he has failed to sufficiently allege a claim for interference with the right to record. *See Fordyce*, 55 F.3d at 439.

Therefore, Claim XVI Against the City of National City is **DISMISSED WITH LEAVE TO AMEND**.

> 8.  *Claim XVII: 42 U.S.C. § 1983 Failure to Intervene Under the Fourth Amendment*

Police Officers have a duty to intercede when their fellow officers violate constitutional rights. *Tobias v. Arteaga*, 996 F.3d 571, 583–84 (9th Cir. 2021) (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000)). If an officer fails to intercede, "the constitutional right violated by the passive defendant is analytically the same as the

25-CV-2172 JLS (GC)

right violated by the person who" performed the offending action. *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), *aff'd in part and rev'd in part*, 518 U.S. 81 (1996). "[H]owever, officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Cunningham*, 229 F.3d at 1289; *see also Ramirez v. Butte-Silver Bow Cnty.*, 298 F.3d 1022, 1029–30 (9th Cir. 2002) (finding no violation of duty to intercede where there was no evidence that the defendant was aware of the constitutional violation as it occurred), *aff'd sub nom.*, *Groh v. Ramirez*, 540 U.S. 551(2004).

        a.     Al-Mosawi, Velazquez, Vargas, Pauu, and Quezada

Plaintiff alleges that Al-Mosawi, Velazquez, Vargas, Pauu, and Quezada observed and had an opportunity to intercede during the arrest on July 25, 2024. FAC ¶¶ 11, 141. Plaintiff alleges that officers were presented with "an obvious constitutional violation." *Id.* at 141. Plaintiff cites the seizure of his phone and vaguely references the force used by the officers. *Id.*

To establish a claim against an officer who failed to intercede, a plaintiff must show that a constitutional violation has been committed at all. *See Koon*, 34 F.3d 1416, 1447 n.25. Claim III regarding unreasonable force has been sufficiently alleged and has been referenced in this claim, taking all of Plaintiff's allegations as true, it is plausible that there was a failure to intervene. While Al-Mosawi, Velazquez, Vargas, and Pauu are listed as Defendants under Claim III, the Court finds that Plaintiff cannot both allege that the officers used excessive force and failed to intervene against themselves. *See Flores v. City of Concord*, No. 15-CV-5244-PJH, 2017 WL 3641862, at *1 (N.D. Cal. Aug. 24, 2017) ("As to the 'failure to intervene' theory, plaintiff cannot simultaneously allege that [the defendant officers] used excessive force and failed to intervene against themselves . . . .").

Thus, Claim XVII has been sufficiently alleged against Quezada, but is **DISMISSED WITH LEAVE TO AMEND** against Al-Mosawi, Velazquez, Vargas, and Pauu.

/ / /

/ / /

25-CV-2172 JLS (GC)

b.    Quiroga

Plaintiff alleges that Quiroga "observed" and "encouraged" Vargas applying handcuffs during the December 12, 2025, stop.  FAC ¶ 143.

To establish a claim against an officer who failed to intercede, a plaintiff must show that a constitutional violation has been committed at all.  *See Koon*, 34 F.3d at 1447 n.25.  Claim VII regarding unreasonable seizure against both Quiroga and Vargas was sufficiently alleged.  The Court also finds that Quiroga cannot fail to intervene in his own unreasonable seizure.  *See Flores*, 2017 WL 3641862, at *1.  Given that, Claim XVII against Quiroga is **DISMISSED WITH LEAVE TO AMEND**.

9.    *Claim XVIII: 42 U.S.C. § 1983 Deliberate Indifference to Medical Needs Under the Fourteenth Amendment*

For a claim for deliberate indifference to medical needs to succeed, a plaintiff must show a defendant acted with "objective indifference."  *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1120 (9th Cir. 2018).  In general, the test for deliberate inference is:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
> (ii) those conditions put the plaintiff at substantial risk of suffering serious harm;
> (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
> (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125.  The term "reasonable" in the third element is objective and necessarily will turn on the facts of each case.  *Id.*

a.    Norie and Pauu

Plaintiff alleges that during his arrest on July 25, 2024, he suffered a rotator cuff injury and a panic attack.  FAC ¶ 149.  Plaintiff contends that following his arrest, Norie and Pauu were "aware of Plaintiff's physical injury and mental distress" and waited

25-CV-2172 JLS (GC)

approximately forty-five minutes to call for an ambulance. *Id.* ¶ 150. Plaintiff alleges that this delay caused "chronic and substantial pain" and that the only reason for the delay was "punitive withholding." *Id.*

First, Plaintiff alleges that he was arrested, in handcuffs, and was transported to police headquarters. *Id.* It is plausible that Norie and Pauu intentionally chose to confine Plaintiff this way and had a controlling say in how the confinement happened.

Second, Plaintiff alleges that the delay in receiving medical attention caused an exacerbation of his previous injuries. To have a substantial risk of suffering harm, a Plaintiff must have a serious medical condition. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A serious medical condition is one where a reasonable patient or doctor would find the condition important and worthy of treatment. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)). Taking Plaintiff's allegations as true, Plaintiff's shoulder injury and mental episode could plausibly be considered a serious medical condition, and handcuffing Plaintiff and transporting him to the police headquarters could have put him at substantial risk of suffering serious harm.

Third, Plaintiff alleges the exacerbation of his injuries was "foreseeable" and his symptoms were "visible." FAC ¶¶ 149–50. While these are legal conclusions and not factual allegations, Plaintiff's verbal requests and physical symptoms may have persuaded a "reasonable" officer to take measures to abate the risk, such as expediting medical treatment.

Fourth, Plaintiff alleges that by not expediting medical attention, Norie and Pauu caused his exacerbated injuries. FAC ¶ 150. At this stage, it is plausible that Plaintiff would not have suffered additional "orthopedic and psychological injuries" if medical treatment was expedited.

Accordingly, Plaintiff has sufficiently alleged a deliberate indifference to medical attention claim against Norie and Pauu.

25-CV-2172 JLS (GC)

b.  Jane Doe 1

Plaintiff alleges that Jane Doe 1, an alleged medical provider for National City, "exhibited deliberate indifference" by failing to properly diagnose Plaintiff's injuries or to provide care.  FAC ¶¶ 5, 151.  Plaintiff acknowledges that he was seen by additional hospital staff who came to the same medical conclusion as Jane Doe 1.  *Id.* ¶ 15.  Plaintiff alleges some derogatory comments made by Jane Doe 1.  *Id.*

Plaintiff does not allege sufficient facts to maintain a claim against Jane Doe 1. Plaintiff does not allege that Jane Doe 1 made an intentional decision or had any say in how he was confined.  *See Gordon*, 888 F.3d at 1125.  Further, other than alleging derogatory comments and that Jane Doe 1 did not "provide care," Plaintiff does not allege any of the other required elements.  *See id.*

Accordingly, Claim XVIII against Jane Doe 1 is **DISMISSED WITH LEAVE TO AMEND.**

### 10.  *Claim XX: 42 U.S.C. § 1983 Monell Claim*

In Claim XX, Plaintiff alleges that National City is liable for deprivations of his constitutional rights resulting from their formal policies or customs under *Monell*.  *See* FAC ¶¶ 163–171; *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691–95 (1978). Plaintiff alleges that National City inadequately trains its police officers on de-escalation tactics and the appropriate use of force.  FAC ¶ 163.  Plaintiff further alleges that National City has a policy and custom of "inadequately investigating citizen complaints of police misconduct" and ratifying police misconduct by failing to discipline officers.  *Id.* ¶¶ 164–165.

A local government, such as National City, can be sued under Section 1983 for deprivations of constitutional rights resulting from their formal policies or customs. *Monell*, 436 U.S. at 691–95.  To hold a municipality liable, a plaintiff must allege: (1) the plaintiff was deprived of a constitutional right, (2) the municipality had a policy, (3) this policy amounts to deliberate indifference to the plaintiff's rights, and (4) the policy is the moving force behind the violation.  *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th

31

Cir. 1996) (quoting *Oviatt v. Pearce*, 945 F.2d 1470, 1474 (9th Cir. 1992)).  "Municipalities may be liable under § 1983 for constitutional injuries pursuant to: (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise or discipline; or (4) a decision or act by a final policymaker."  *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019) (citing *Monell*, 435 U.S. at 693–95).

Here, Plaintiff alleges failure to train officers on use of excessive force and de-escalation techniques, a pervasive practice of failing to investigate citizen complaints of police misconduct, and ratification of police misconduct by failure to discipline officers.  FAC ¶¶ 163–170.

a.   Failure to Train

Plaintiff must sufficiently allege that National City's failure to train amounted to "deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  A failure to train must reflect "a deliberate or conscious choice by a municipality."  *Id.* at 389 (internal quotation marks omitted).  "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation marks omitted) (quoting *Bd. of Cnty. Com'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)).  When city policymakers are "on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights," the city may be found deliberately indifferent if they chose to retain that program.  *Id.*  To demonstrate that failure to train amounts to deliberate indifference, it is "ordinarily necessary to demonstrate a pattern of similar constitutional violations by untrained employees."  *Scalia v. Cnty. of Kern*, 308 F. Supp. 3d. 1064, 1078 (E.D. Cal. 2018) (internal quotation marks omitted) (quoting *Connick*, 563 U.S. at 62).

Here, Plaintiff alleges, in a conclusory manner, that the actions of the Arresting Officers the day of the July 25, 2024, incident were "a direct result" of inadequate training by National City.  FAC ¶ 163.  Alleging misconduct on the part of a handful of officers is

32

insufficient to allege a program-wide policy of deliberate indifference. *See Hyde v. City of Willcox*, 23 F.4th 863, 874–75 (9th Cir. 2022) ("While deliberate indifference can be inferred from a single incident when the unconstitutional consequences of failing to train are patently obvious . . . an inadequate training policy itself cannot be inferred from a single incident." (internal citations omitted)). Plaintiff attempts to allege a "pattern of similar constitutional violations" based on the cases of "*McNeill v. City of National City* and *Cummins v. City of National City*."[3] FAC ¶ 166. Plaintiff states only that "the case of *McNeill v. City of National City* is substantially similar to Plaintiff's case." *Id.* Plaintiff does not allege any factual similarities between these cases and the current incident and does not allege any other instances of excessive force to suggest a failure to train. *See Hendrix v. City of San Diego*, 20-CV-45 TWR (NLS), 2021 WL 3892671, at *8 (S.D. Cal. Aug. 11, 2021) (dismissing a failure to train claim because plaintiff did not allege similar constitutional violations to the one at issue); *Zahn v. Flathead Cnty.*, CV 23-65-M-DLC, 2024 WL 1374723, at *5 (D. Mont. Apr. 1, 2024) (finding that citing to four other prior shootings was insufficient to show a custom because plaintiff failed to allege factual similarities or constitutional violations); *Gonzalez v. City of Huntington Beach*, SA CV 18-953-DOC (DFMx), 2018 WL 9537311, at *7 (C.D. Cal. Oct. 12, 2018) (dismissing a failure to train claim because plaintiff solely relied on the incident in question).

Therefore, Plaintiff's failure to train *Monell* claim is **DISMISSED WITH LEAVE TO AMEND**.

/ / /

---

[3] The Court presumes that Plaintiff is referring to *Davis v. City of National City*, 19-CV-534-AJB-AHG, 2020 WL 6799380 (S.D. Cal. Nov. 19, 2020) and *Cummins v. City of Nat'l City*, 37-2022-00004671-CU-OE-CTL, 2023 Cal. Super. LEXIS 36971 (S.D. Super. Ct. May 26, 2023), generally. *See* John Carroll, *National City Oks $300K Settlement With Early McNeil's Family*, KPBS (Sept. 22, 2021 at 1:33 PM PDT), https://www.kpbs.org/news/public-safety/2021/09/22/national-city-approves-300000-settlement-family-ea; Jeff McDonald & Tammy Murga, *Jury awards $10M to former officer who accused National City police of discrimination, harassment*, SAN DIEGO UNION-TRIBUNE (Apr. 1, 2025), https://www.sandiegouniontribune.com/2025/04/01/jury-awards-10m-to-former-officer-who-accused-national-city-police-of-discrimination-harassment/.

25-CV-2172 JLS (GC)

b.      Policy or Custom of Failure to Investigate Citizen Complaints

Plaintiff further alleges that National City has a policy and custom of "inadequately investigating citizen complaints of misconduct," which "discourages citizens from reporting misconduct and creates an environment where officers believe they can act with impunity." FAC. ¶ 164. Plaintiff alleges that this failure to investigate patterns of excessive force "perpetuates this unconstitutional custom" and ultimately led to the Arresting Officers' failure to investigate possible exculpatory evidence, Plaintiff's false arrest, and prolonged detention. *Id.*

Allegations of an unconstitutional policy or custom will be sufficient where they "(1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference." *Herd v. Cnty. of San Bernardino*, 311 F. Supp. 3d 1157, 1167 (C.D. Cal. 2018) (quoting *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1163 (E.D. Cal 2009)). This policy must be the proximate cause of the § 1983 injury. *Van Ort*, 92 F.3d at 837 (citing *Mann v. City of Tucson, Dep't of Police*, 782 F.2d 790, 793 (9th Cir. 1986)).

Here, Plaintiff again alleges in a conclusory manner that there is a policy or custom of inadequately investigating citizen complaints and attempts to connect the potential constitutional violations by the Arresting Officers to this alleged custom. *See* FAC ¶ 164. Plaintiff has failed to allege any facts that this policy or custom exists. *See Hendrix*, 2021 WL 3892671, at *10 (dismissing a policy/custom *Monell* claim because plaintiff failed to allege that the policy in question exists, that it was the "moving force" behind the constitutional violation, and how that policy reflected deliberate indifference on the part of the city). Assuming the policy does exist, Plaintiff suggests that the policy generally led to his "false arrest" with no facts alleged to support this conclusion. *See id.*

Therefore, Plaintiff's policy/custom *Monell* claim is **DISMISSED WITH LEAVE TO AMEND**.

/ / /

c.      Ratification

Plaintiff further alleges that National City ratifies and condones "unconstitutional conduct of its officers, including excessive force, false arrest, and First Amendment retaliation, by failing to discipline officers involved in prior incidents of misconduct." FAC ¶ 165.  To support this assertion, Plaintiff alleges that after his release from custody, he went to the National City Police Department Headquarters to file a formal complaint.  *Id.* Plaintiff then alleges that "[a]n Internal Affair Detective (John Doe 2)"[4] stated he was aware of the arrest and that the officers followed their training.  *Id.*

Plaintiff has failed to allege a ratification claim.  To plead ratification, a plaintiff must allege that the "authorized policymakers approve[d] a subordinate's decision and the basis for it."  *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).  "The policymaker must have knowledge of the constitutional violation and actually approve of it. . . ."  *Herd*, 311 F. Supp. 3d at 1169 (citing *Lytle*, 382 F.3d at 987)).  Assuming an Internal Affair Detective qualifies as an "authorized policymaker," Plaintiff needs to allege more than a singular incidence of an alleged failure to discipline.  *See Koenig v. City of Bainbridge Island*, No. C10-5700 RJB, 2011 WL 3759779, at *8 (W.D. Wash. Aug. 25, 2011) ("[I]n order for there to be ratification, there must be something more than a single failure to discipline or the fact that a policymaker concluded that the defendant officer's actions were in keeping with the applicable policies and procedures." (internal citations omitted)); *see Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 788 (9th Cir. 2022) (finding that a failure to discipline does not meet the requirements of ratification).

Therefore, Plaintiff's ratification *Monell* claim is **DISMISSED WITH LEAVE TO AMEND**.

11.      *Claim XXI*

Claim XXI is against "Defendant Officer Doe" and "The City of National City." FAC ¶¶ 175, 178.  This Claim, which is titled as "First Amendment Retaliation and

---

[4] John Doe 2 is not identified elsewhere in the FAC.  *See generally* FAC.

35

25-CV-2172 JLS (GC)

Interference with the Right to Record," references Plaintiff's earlier right to record claims, retaliation claims, and *Monell* claims in a repetitive way.[5] *See id.* ¶¶ 173–180. Since all related claims have been dismissed as discussed above, Claim XXI is also **DISMISSED WITH LEAVE TO AMEND.**

### D.    *California State Law Claims*

As Plaintiff has stated a claim under Section 1983, the Court now considers Plaintiff's allegations under California law. Plaintiff alleges: (1) false imprisonment; (2) intentional infliction of emotional distress; (3) negligent infliction of emotional distress; and (4) violations of the Tom Bane Civil Rights Act against "all defendants."[6] *See generally* FAC. The Court considers each in turn.

#### 1.    *Claims IX and X: False Imprisonment Against Garcia, Norie, Al-Mosawi, Velazquez, Vargas, Pauu, Quiroga, and Quezada*

In Claim IX, Plaintiff alleges that Garcia, Norie, Al-Mosawi, Velazquez, Vargas, Pauu, and Quezada "intentionally, unlawfully, and without legal justification confined Plaintiff for approximately [ninety-six] hours" by arresting and detaining him without probable cause. FAC ¶ 85. In Claim X, Plaintiff alleges false imprisonment against Vargas and Quiroga for their conduct on his stop on December 12, 2025, specifically alleging that the stop was based on "scientifically impossible claims" and that the encounter "became an unlawful confinement." *Id.* ¶¶ 92–94.

"Under California law, the torts of false arrest and false imprisonment are not separate torts, as false arrest is 'but one way of committing a false imprisonment.'" *Watts v. Cnty. of Sacramento*, 256 F.3d 886, 891 (9th Cir. 2001) (quoting *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 752 n.3 (1997)). A false imprisonment claim based on an unlawful arrest arises where "there was an arrest without process followed by imprisonment." *Id.* (citations omitted). The elements of a claim for false imprisonment

---

[5] Claims XVI, XIX, and XX respectively.

[6] All defendants are as follows: Quezada, Norie, Al-Mosawi, Velazquez, Vargas, Quiroga, Pauu, Garcia, John Doe 1, Jane Doe 1, National City.

25-CV-2172 JLS (GC)

under California law are: "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1169 (9th Cir. 2011) (internal quotation marks and citations omitted).

A law enforcement officer is not liable for false imprisonment arising out of an arrest if "[t]he arrest was lawful" or the officer "at the time of the arrest, had reasonable cause to believe the arrest was lawful." Cal. Pen. Code § 847(b)(1). "California courts speak of 'reasonable cause' and 'probable cause' interchangeably." *Cornell v. City and Cnty. of San Francisco*, 17 Cal. App. 5th 766, 786, 790 (2017) (declining to define, absent legislative authorization, that § 847 adds "an additional layer of protection from civil liability beyond . . . probable cause").

### a.    Claim IX Against Garcia

Plaintiff alleges that Garcia is "liable for false imprisonment because he instigated and directed the unlawful arrest." FAC ¶ 86. Plaintiff further alleges Garcia "knowingly" filed a false report and "intentionally" induced the officers to arrest Plaintiff. *Id.*

A private citizen who accuses another of a crime is liable for false imprisonment "if the accuser knowingly makes false statements to the police with the intent to induce an arrest; and for the purpose of imposing confinement upon the accused or with knowledge that confinement will, to a substantial certainty, result from the accusation." *Arpin*, 261 F.3d at 925.

Taking Plaintiff's allegations as true, Garcia knew that Plaintiff never drew his knife yet reported that he did to the police anyway. FAC ¶ 12. Garcia plausibly understood that reporting an armed threat to the police would lead to the perpetrator's arrest. Since all elements as set forth in *Arpin* can be reasonably inferred, Plaintiff has sufficiently alleged false imprisonment against Garcia.

///

///

///

25-CV-2172 JLS (GC)

> b.   Claim IX against Quezada, Norie, Al-Mosawi, Velazquez, Vargas, and Pauu

Here, Plaintiff alleges that he did not consent to being confined and that he was in custody for "96 hours." FAC ¶ 92. This is sufficient to allege the first and third elements. *See Young*, 655 F.3d at 1169.

With respect to element two, "without lawful privilege," the officers are not liable if they had probable cause to arrest Plaintiff. *See* Cal. Pen. Code § 847(b)(1). Here, as discussed above, Plaintiff has sufficiently alleged that the Arresting Officers arrested him without probable cause. Therefore, Plaintiff has sufficiently alleged false imprisonment against the Arresting Officers.

> c.   Claim X Against Vargas and Quiroga

Here, Plaintiff alleges that he did not consent to being confined and that he was detained and handcuffed for a few minutes during the December 12, 2025, incident. FAC ¶ 92. This is sufficient to allege the first and third elements. *See Young*, 655 F.3d at 1169.

With respect to element two, "without lawful privilege," the officers are not liable if they had probable cause to arrest Plaintiff. *See* Cal. Pen. Code § 847(b)(1). Here, as discussed above, Plaintiff has sufficiently alleged that Vargas and Quiroga may have violated his Fourth Amendment rights.[7] However, that finding was based on the officers' use of handcuffing, a "more intrusive" method of investigation, not a lack of probable cause for the stop. Plaintiff asserts that the probable cause was based on a "scientific impossibility" of not seeing debris for "blocks," however, based on Plaintiff's FAC, not seeing debris was a rejection of the exculpatory evidence Plaintiff was trying to provide, not the reason for the stop in the first place. *See* FAC ¶¶ 22, 94. Accordingly, Plaintiff has not sufficiently pled that there was no probable cause for his detention. Thus, Claim X against Vargas and Quiroga is **DISMISSED WITH LEAVE TO AMEND**.

///

---

[7] Claim VII.

### 2. Claims XI and XIII: Intentional Infliction of Emotional Distress

In Claim XI, Plaintiff alleges that Garcia, Norie, Al-Mosawi, Velazquez, Vargas, Pauu, and Jane Doe 1, an unidentified EMT/Paramedic, "engaged in a course of conduct that, taken in its totality, was extreme, outrageous, and beyond all bounds of decency tolerated in a civilized society." FAC ¶ 99. In Claim XIII Plaintiff alleges Vargas and Quiroga "engaged in extreme and outrageous conduct by initiating a high-pressure detention based on a 'scientifically impossible' pretext regarding road debris." *Id.* ¶ 115.

Under California law, to state a claim for intentional infliction of emotional distress (IIED), Plaintiff must allege:

> (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by [the] defendant's outrageous conduct.

*Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996) (citing *Christensen v. Superior Ct.*, 54 Cal. 3d 868, 903 (1991)). "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Miller v. Fortune Com. Corp.*, 15 Cal. App. 5th 214, 229 (2017). There is no bright line rule for when conduct qualifies as outrageous, and it is typically a question of fact for the jury. *So v. Shin*, 212 Cal. App. 4th 652, 671 (2013). "A court may dismiss such claims as a matter of law if the conduct alleged is insufficiently outrageous, particularly where the conduct alleged amounts to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Morse v. Cnty. of Merced*, No. 16-cv-142-DAD-SKO, 2016 WL 3254034, at *13 (E.D. Cal. June 13, 2016) (quoting *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009)).

/ / /

/ / /

/ / /

/ / /

a.      Claim XI Against Garcia

Plaintiff alleges that Garcia[8] "knowingly made a false report to law enforcement" that he knew or should have known "would lead to Plaintiff's arrest, detention, and the foreseeable emotional distress associated with being falsely accused of a crime."  FAC ¶ 100.  The conduct alleged by Plaintiff goes beyond "mere insults."  Plaintiff alleges that Garcia intentionally made a false report with the purpose of harassing and seeking retribution against Plaintiff.  *Id.* ¶¶ 43, 100.  Therefore, Plaintiff has sufficiently stated a claim for IIED against Garcia.  *See Morse*, 2016 WL 3254034, at *13 (surviving a motion to dismiss where plaintiff alleged that "individual defendants knowingly misrepresented information in order to arrest him and charge him with murder" to "exact political retribution against plaintiff's father").

b.      Claim XI Norie, Al-Mosawi, Velazquez, Vargas, and Pauu: July 24, 2025, Incident

Plaintiff alleges that Norie, Al-Mosawi, Velazquez, Vargas, and Pauu continued to hold him at gunpoint "long after" the scene was secured, disabled Plaintiff's recording device, and falsified official records by "'sanitizing' Garcia's verbal assault into a mutual

---

[8] The Court notes that Garcia, at this stage, is not statutorily immune from an IIED claim.  California Civil Code section 47 provides that "any official proceeding authorized by law" is privileged.  The purpose of section 47 is to provide citizens with "free and open access to government agencies for the reporting of suspected illegal activity."  *Williams v. Taylor*, 129 Cal. App. 3d 745, 754 (1982).  However, effective January 1, 2021, the California Legislature amended § 47(b) adding an exception to the absolute privilege for "any communication between a person and law enforcement agency in which the person makes a false report . . . knowing that the report is false, or with reckless disregard for the truth or falsity of the report."  Cal. Civ. Code § 47(b)(5).  Therefore, taking Plaintiff's allegations as true, Garcia is not absolutely privileged based on his call to law enforcement because it was intentionally false.  Further, if Garcia is found to have made the call pursuant to his duties as a city maintenance employee, he is also not statutorily immune.  Pursuant to California Government Code § 821.6, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."  However, this immunity does not apply if the injury is "caused by acts that are merely investigatory and unconnected to the prosecution of any official proceeding."  *Leon v. Cnty. of Riverside*, 14 Cal. 5th 910, 926 (2023).  Therefore, because there were no formal charges brought against Plaintiff, Garcia is not immune if found to be acting as a public employee.  *See id.* (finding § 821.6 immunity does not apply in a case where no charges are ever filed and no judicial proceeding is ever prosecuted).

25-CV-2172 JLS (GC)

'altercation.'" FAC ¶ 101.  Plaintiff alleges these actions cause him to "suffer severe and enduring emotional distress."  *Id.* ¶ 103.  As alleged, the officers' conduct could be sufficiently outrageous.  Police officers intentionally fabricating reports to deny someone their liberty would likely be more than a "mere triviality."  *See Morse*, 2016 WL 3254034, at *13.  Since Plaintiff has alleged he suffered extreme emotional distress and that the officers' actions were the cause, he has sufficiently stated a claim for IIED against Norie, Al-Mosawi, Velazquez, Vargas, and Pauu.

     c.  Claim XI Against Vargas: December 12, 2025, Incident

Plaintiff alleges Vargas "hid" his knife inside the side pocket of his backpack after searching him during the stop on December 12, 2025.  FAC ¶¶ 23, 101.  Plaintiff alleges this led him to believe the knife was "stolen or permanently 'disappeared.'"  *Id.* ¶ 101. Plaintiff alleges he called the National City Police Department to "demand" the return of his knife, after which he was called by the police department to inform him that his knife was in his backpack.  *Id.* ¶ 24.

Vargas' conduct was not sufficiently outrageous to state an IIED claim.  While Plaintiff did have to call the police department to find his knife, based on Plaintiff's statements it seems that Vargas was attempting to return the knife, a far cry from conduct that "exceed[s] all bounds of that usually tolerated in a civilized community."  *See Miller*, 15 Cal. App. 5th at 229. Accordingly, Claim XI against Vargas is **DISMISSED WITH LEAVE TO AMEND**.

     d.  Claim XI Jane Doe 1

Plaintiff alleges that, while in custody, Jane Doe 1 "acted with reckless disregard by mocking Plaintiff's physical and mental pain."  FAC ¶ 102.  Jane Doe 1 is a medical professional who treated Plaintiff after his arrest.  *Id.* ¶ 15.  Jane Doe 1 allegedly accused him of faking his injuries and compared Plaintiff to "homeless people [who] lie about having a heart attack."  *Id.* ¶ 102.  The Court finds that this conduct is not sufficiently outrageous to state a claim for IIED and rather is a "mere insult."  *Morse*, 2016 WL

25-CV-2172 JLS (GC)

3254034, at *13.  The Court finds that any further amendment would be futile.  Therefore, Claim XI against Jane Doe 1 is **DISMISSED WITHOUT LEAVE TO AMEND**.

> e.    Claim XIII Against Vargas and Quiroga

Plaintiff alleges Vargas and Quiroga engaged in extreme and outrageous conduct during his December 12, 2025, traffic stop.  FAC ¶ 115.  Plaintiff alleges the officers forced him to put his hands on his head and hid his knife.  *Id.* ¶¶ 116–119.  As discussed above, "hiding" the knife in Plaintiff's backpack does not amount to extreme or outrageous conduct.  Further, having a suspect who was recently disarmed put their hands on their head is common practice during stops, and a minor annoyance at worst.  *See Mille*r, 15 Cal. App. 5th at 229.  Since Plaintiff has not alleged any extreme or outrageous conduct, Claim XIII is **DISMISSED WITH LEAVE TO AMEND**.

> 3.    *Claims XII and XIV: Negligent Infliction of Emotional Distress*

In Claim XII, Plaintiff alleges that Norie, Al-Mosawi, Velazquez, and Pauu owed a duty to "act as reasonable and prudent officers" and breached that duty by escalating a "littering" inquiry into a "high-risk gunpoint seizure."  FAC ¶ 107.  Plaintiff further alleges Vargas and Quiroga breached the same duty by initiating a detention based on a "physically impossible observation."  *Id.*  Plaintiff expands on this in a repetitive claim, Claim XIV.  *Id.* ¶¶ 141–125.  Plaintiff also alleges that Jane Doe 1 breached a duty to provide "non-discriminatory, respectful, and appropriate medical care."  *Id.* ¶ 109.

Under California law, "[a] claim of negligent infliction of emotional distress is not an independent tort but the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply."  *Belen v. Ryan Seacrest Prods., LLC*, 65 Cal. App. 5th 1145, 1165 (2021) (internal quotation marks omitted).  In a lawful police encounter, "police officers have a duty not to use excessive force."  *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1164 (N.D. Cal. 2009) (quoting *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1101 (2004)).

/ / /

/ / /

42

25-CV-2172 JLS (GC)

           a.     Claim XII Against Norie, Al-Mosawi, Velazquez, Vargas, and Pauu

Here, because Plaintiff has sufficiently alleged an excessive force claim, Plaintiff has also sufficiently alleged a negligent infliction of emotional distress (NIED) claim based on excessive force. *See J.C. v. City of Vallejo*, No. 24-CV-1879-JAM-AC, 2025 WL 1135045, at \*5 (E.D. Cal. Apr. 17, 2025) (finding that alleging excessive force was sufficient to allege NIED on the same grounds). Further, as discussed above, Plaintiff has sufficiently alleged false arrest and false imprisonment against Norie, Al-Mosawi, Velazquez, Vargas, and Pauu, which creates sufficient grounds for an NIED claim to survive screening. *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 n.4 (9th Cir. 2008) (noting that the district court had dismissed a claim for negligent infliction of emotional distress because it was predicated on a claim for false arrest, which was also dismissed); *see also Baker v. Rodriguez*, No. SACV 11-138-JST (PJWx), 2012 WL 137461, at \*8 (C.D. Cal. Jan. 17, 2012) (holding that because plaintiff had stated a valid claim for false imprisonment, he also stated a valid claim for NIED).

Therefore, Plaintiff has sufficiently alleged a NIED claim against Norie, Al-Mosawi, Velazquez, Vargas, and Pauu.

           b.     Claim XII and XIV Against Vargas and Quiroga

Plaintiff alleges that Vargas and Quiroga breached a duty because the December 12, 2025, stop was initiated on a "pretextual basis." FAC ¶ 107. As discussed above, by Plaintiff's own allegations, the stop was based on Plaintiff's conduct of riding his bicycle on the sidewalk. *See id.* ¶ 22. Plaintiff alleges that placing handcuffs on an unarmed person was an "unreasonable breach of the standard of care." *Id.* ¶ 122. However, Plaintiff admits to having a knife which was not taken until after handcuffs were placed on him, so he was not "unarmed." *Id.* ¶ 22. Since Plaintiff has not sufficiently alleged a duty of care was breached, Claim XII and Claim XIV against Vargas and Quiroga are **DISMISSED WITH LEAVE TO AMEND**.

/ / /

25-CV-2172 JLS (GC)

c.        Claim XII Against Jane Doe 1

Plaintiff alleges Jane Doe 1 failed to conduct a proper medical assessment and made discriminatory insults regarding "homeless people." FAC ¶ 110. Plaintiff alleges Jane Doe 1 had a duty to be respectful and to provide appropriate medical care. *Id.* ¶ 109. Plaintiff argues this conduct caused damages by "compounding Plaintiff's psychological trauma." *Id.* ¶ 110. Plaintiff also alleges other "Hospital staff" who saw him after Jane Doe 1 confirmed Jane Doe 1's medical analysis. *Id.* ¶ 15.

For a negligence claim, emotional distress may be found where a "reasonable person would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Belen*, 65 Cal. App. 5th at 1166. In general, mere insults would not cause a reasonable person to be unable to cope with the mental stress caused by them. *See Morse*, 2016 WL 3254034, at *13. Further, as Plaintiff alleges many hospital staff confirmed Jane Doe 1's medical assessment. FAC ¶ 15. Taking Plaintiff's allegations as true, Jane Doe 1 has not breached a duty owed to Plaintiff. The Court finds that any further amendment would be futile. Accordingly, Claim XII against Jane Doe 1 **IS DISMISSED WITHOUT LEAVE TO AMEND**.

4.        *Claim XV: Violations of the Tom Bane Civil Rights Act—California Civil Code § 52.1*

In Claim XV, Plaintiff alleges that "all defendants"[9] interfered with his right to be free from unreasonable seizure under the Fourth Amendment by using threats, intimidation, and coercion in violation of the Tom Bane Civil Rights Act, codified in California Civil Code § 52.1. FAC ¶¶ 127–131.

The Bane Act provides a private cause of action for "[a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of [California], has been interfered with" through

---

[9] All Defendants are as follows: Quezada, Norie, Al-Mosawi, Velazquez, Vargas, Quiroga, Pauu, Garcia, John Doe 1, Jane Doe 1, National City.

25-CV-2172 JLS (GC)

"threat[s], intimidation, or coercion." Cal. Civ. Code § 52(b)–(c). "The elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the added requirement that the government official had a 'specific intent to violate' a constitutional right." *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022) (quoting *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018)). There are two elements to plead a Bane Act claim. First, "there must be a 'threat, intimidation, or coercion,' although that element need not be 'transactionally independent' from the underlying constitutional violation alleged." *City of Marina*, 709 F. Supp. 3d at 938 (quoting *Reese*, 888 F.3d at 1043). Second, the plaintiff must demonstrate that the defendant had a "specific intent" to commit the constitutional violation. *Reese*, 888 F.3d at 1043.

To show specific intent, the right at issue must be "clearly delineated and plainly applicable under the circumstances of the case," and the defendant must have committed the act in question with the particular purpose of depriving the plaintiff of his enjoyment of that right. *Cornell*, 17 Cal. App. 5th at 803. The intent requirement is satisfied where the defendant allegedly acted with "[r]eckless disregard of the right at issue." *Estate of Serna v. Cnty. of San Diego*, No. 20-CV-2096-LAB-MSB, 2022 WL 827123, at *8 (S.D. Cal. Mar. 18, 2022) (quoting *Cornell*, 17 Cal. App. 5th at 804).

> a.    Claim XV Against Quezada, Norie, Al-Mosawi, Velazquez, Vargas, Quiroga, Pauu, and Garcia

Here, as discussed above, Plaintiff has sufficiently pled false arrest claims against the Arresting Officers and Garcia. In his false arrest claim, Plaintiff alleges that the Arresting Officer's conduct "demonstrates a deliberate indifference to the truth" when they failed to investigate exculpatory evidence. FAC ¶ 46. "At the motion to dismiss stage . . . allegations of conduct that violates constitutional rights coupled with allegations that the conduct was done with reckless disregard for a party's rights can be sufficient to establish specific intent." *City of Marina*, 709 F. Supp. 3d at 939. Further, Plaintiff alleges that Garcia intentionally made a false report to cause an interference with Plaintiff's liberty. FAC ¶ 43. Regarding Quiroga, Plaintiff sufficiently stated claims for First Amendment

retaliation (Claim VIII) and unreasonable seizure (Claim VII). Plaintiff alleges that Quiroga acted "specifically to intimate Plaintiff regarding his history of filing complaints." FAC ¶ 129. Therefore, Plaintiff has sufficiently stated a Bane Act claim against the Arresting Officers, Quiroga, and Garcia.

                      **b.**        **Claim XV Against John Doe 1, Jane Doe 1, National City**

Plaintiff has failed to sufficiently allege a constitutional violation by John Doe 1, Jane Doe 1, and National City. *See generally* FAC. Accordingly, Claim XV against John Doe 1, Jane Doe 1, and National City is **DISMISSED WITH LEAVE TO AMEND**.

### E.    Doe Defendants

Plaintiff names as Defendants John Doe 1 and Jane Doe 1. "Courts especially disfavor 'Doe' pleading in an IFP case because, in the event the plaintiff's complaint alleges a plausible claim for relief, it is effectively impossible for the United States Marshal or deputy marshal to fulfill his or her duty to serve an unnamed defendant." *Pressley v. San Diego EMT Staff*, No. 24-CV-1940 JLS (MMP), 2025 WL 1642436, at *4 (S.D. Cal. June 9, 2025) (first citing Fed. R. Civ. P. 4(c)(3); then citing 28 U.S.C. § 1915(d)). A plaintiff still may refer to unknown defendants as "Doe" defendants, however "he must allege specific facts showing how each particular doe defendant violated his rights." *Id.* (citing *Cuda v. Employees/Contractors/Agents at or OCCC*, No. 19-00084 DKW-KJM, 2019 WL 2062945, at *4 (D. Haw. May 9, 2019)).

Regarding John Doe 1, and Jane Doe 1, Plaintiff fails to link any violation of his rights to their conduct. John Doe 1 was only vaguely mentioned as having conversed with police and no other offensive conduct was alleged. FAC ¶ 13. Further, Plaintiff alleges that Jane Doe 1, an EMT, made insults towards him while providing medical care. *Id.* ¶ 15. As discussed above, none of her conduct violated Plaintiff's rights as alleged. Therefore, the Doe Defendants are **DISMISSED**.

/ / /

/ / /

/ / /

## CONCLUSION

In light of the foregoing, the Court:

1. **GRANTS** Plaintiff's Motion to File Supplemental Pleadings (ECF No. 13);

2. **GRANTS** Plaintiff's Motion for Extension of Time to File First Amended and Supplemental Complaint (ECF No. 14);

3. **DENIES AS MOOT** Plaintiff's Motion to Compel Compliance (ECF No. 16);

4. **DISMISSES WITHOUT LEAVE TO AMEND** Claim I, malicious prosecution, against Garcie, Norie, Al-Mosawi, Velasquez, Vargas, Pauu, Quezada, and John Doe 1;

5. **DISMISSES** Claim IV, unreasonable search, against Vargas and Quiroga **WITH LEAVE TO AMEND**;

6. **DISMISSES** Claim V, unreasonable search, against Vargas and Quiroga **WITH LEAVE TO AMEND**;

7. **DISMISSES** Claim VI, unreasonable seizure of property, against Vargas and Quiroga **WITH LEAVE TO AMEND**;

8. **DISMISSES** Claim X, false imprisonment, against Vargas and Quiroga **WITH LEAVE TO AMEND**;

9. **DISMISSES** Claim XI, intentional infliction of emotional distress, against Vargas arising out of the December 12, 2025, incident **WITH LEAVE TO AMEND**;

10. **DISMISSES** Claim XI, intentional indifference to emotional distress, against Jane Doe 1 **WITHOUT LEAVE TO AMEND**;

11. **DISMISSES** Claim XII, negligent infliction of emotional distress, against Jane Doe 1 **WITHOUT LEAVE TO AMEND**;

12. **DISMISSES** Claim XIII, intentional infliction of emotional distress, against Vargas and Quiroga **WITH LEAVE TO AMEND**;

25-CV-2172 JLS (GC)

13.   **DISMISSES** Claim XII and XIV, negligent infliction of emotional distress, against Vargas and Quiroga arising out of the December 12, 2025, incident **WITH LEAVE TO AMEND**;

14.   **DISMISSES** Claim XV, Tom Bane act, against John Doe 1, Jane Doe 1, and the City of National City **WITH LEAVE TO AMEND**;

15.   **DISMISSES** Claim XVI, interference with right to record, against Norie, Al-Mosawi, Vargas, Quiroga, and the City of National City **WITH LEAVE TO AMEND**;

16.   **DISMISSES** Claim XVII, failure to intervene, against Al-Mosawi, Velazquez, Vargas, Pauu, and Quiroga **WITH LEAVE TO AMEND**;

17.   **DISMISSES** Claim XVIII, deliberate indifference to medical needs, against Jane Doe 1 **WITH LEAVE TO AMEND**;

18.   **DISMISSES** Claim XIX, first amendment retaliation, against Norie, Vargas, Al-Mosawi, Pauu, Quezada, Quiroga, the City of National City, and John Doe 1 **WITH LEAVE TO AMEND**;

19.   **DISMISSES** Claim XX, § 1983 Monell claim, against the City of National City **WITH LEAVE TO AMEND**;

20.   **DISMISSES** Claim XXI, First Amendment Retaliation and Interference with the Right to Record, against the City of National City and John Doe 1 **WITH LEAVE TO AMEND**;

21.   **DISMISSES** John Doe 1, Jane Doe 1, and the City of National City **WITHOUT PREJUDICE**.

As discussed above, the remaining claims have been screened pursuant to 28 U.S.C. § 1915(e)(2). Specifically, the Court finds that these claims are not frivolous or malicious, adequately state a claim upon which relief may be granted, and do not seek damages from immune defendants. *See Lopez*, 203 F.3d at 1126–27. These surviving claims are listed below for convenience:

48

25-CV-2172 JLS (GC)

1. Claim II, false arrest and unreasonable seizure, against Quezada, Norie, Al-Mosawi, Velazquez, Vargas, Pauu, and Garcia;

2. Claim III, unreasonable force, against Norie, Al-Mosawi, Velazquez, Vargas, and Pauu;

3. Claim VII, unreasonable seizure of person, against Vargas and Quiroga;

4. Claim VIII, first amendment retaliation, against Vargas and Quiroga;

5. Claim IX, false imprisonment, against Garcia, Norie, Al-Mosawi, Velazquez, Vargas, Pauu, and Quezada;

6. Claim XI, intentional infliction of emotional distress, against Garcia, Norie, Al-Mosawi, Velazquez, Vargas, and Pauu arising out of the July 25, 2024, incident;

7. Claim XII, negligent infliction of emotional distress, against Norie, Al-Mosawi, Velazquez, Vargas, and Pauu arising out of July 25, 2024 incident;

8. Claim XV, violation of the Tom Bane act, against Quezada, Norie, Al-Mosawi, Velazquez, Vargas, Quiroga, Pauu, and Garcia;

9. Claim XVII, failure to intervene, against Quezada;

10. Claim XVIII, deliberate indifference to medical needs, against Norie and Pauu;

11. Claim XIX, first amendment retaliation, against Garcia;

Plaintiff has the option to either (1) further amend his Complaint or (2) elect to serve the claims that have survived screening on the remaining Defendants.  If Plaintiff chooses to further amend his Complaint, the Court will need to screen his allegations again pursuant to 28 U.S.C. § 1915(e)(2) before service can be conducted.[10]  If Plaintiff elects to serve the surviving claims, **Plaintiff will voluntarily dismiss those claims dismissed in this Order**.

/ / /

/ / /

/ / /

---

[10] The Court cautions Plaintiff that if he chooses to amend the claims dismissed in this Order, and again fails to sufficiently plead his causes of action, they will be dismissed **without leave to amend**.

25-CV-2172 JLS (GC)

**Plaintiff SHALL file a status report alerting the Court of his choice within forty-five (45) days of the electronic docketing of this Order**. If Plaintiff fails to file a status report within forty-five days, the Court will order service of his remaining claims and deem those dismissed in this Order voluntarily dismissed. If Plaintiff chooses to further amend his Complaint, the Court will set a deadline to amend. If Plaintiff chooses to serve his surviving claims, the Court will provide Plaintiff with further instructions to provide the U.S. Marshals with service information.

**IT IS SO ORDERED.**

Dated: July 16, 2026

Hon. Janis L. Sammartino
United States District Judge

25-CV-2172 JLS (GC)